STATE OF NORTH CAROLINA v. ABELARDO C. MARTINEZ

No. COA02-471

(Filed 20 May 2003)

**1. Search and Seizure— investigatory stop—totality of circumstances—late night, lonely road—fleeing from officer**

The trial court correctly concluded that an investigatory stop was justified by a reasonable suspicion of criminal activity where the stop occurred around 2:00 a.m.; there were no vehicles on the road other than defendant's car and patrol vehicles; a man on foot had fled from an officer a few minutes before and about fifty yards from the vehicle; and the officer inferred a connection between the two. Cocaine was found in defendant's pocket.

**2. Search and Seizure— pat down—nervous defendant— object in pocket—no answer about weapons**

A pat down search and the subsequent arrest of defendant and seizure of cocaine, currency, and a weapon were justified

where a nervous defendant who was reaching around inside his vehicle did not respond when asked if he had weapons; the officer then properly asked about an object in defendant's pocket; defendant's reply that the object was "dope" justified the seizure of currency and cocaine and defendant's arrest; and the search of defendant's vehicle and seizure of a weapon were incident to arrest.

Appeal by defendant from order entered 12 February 2002 by Judge W. Osmond Smith in Alamance County Superior Court. Heard in the Court of Appeals 11 February 2003.

*Attorney General Roy A. Cooper, III, by Assistant Attorney General David L. Elliott, for the State.*

*Samuel L. Bridges for defendant-appellant.*

HUNTER, Judge.

Abelardo C. Martinez ("defendant") appeals from an order denying his motion to suppress the alleged contraband seized during an investigatory stop. We affirm for the reasons stated herein.

Defendant was charged in true bills of indictment with felony possession of cocaine, trafficking in cocaine by possession, trafficking in cocaine by transportation, manufacturing cocaine, possession with intent to sell or deliver cocaine, maintaining a vehicle for keeping or selling cocaine, and carrying a concealed weapon. On 25 January 2002, defendant filed a motion to suppress the alleged contraband seized during an investigatory stop. A hearing was held on this motion, during which the State presented testimony from Darren Davis ("Officer Davis"), the City of Mebane police officer who had stopped and searched defendant and his vehicle. After hearing the evidence and arguments, the trial court denied defendant's motion. In its order, the trial court made extensive findings of fact and conclusions of law. Subsequent to the denial of his motion to suppress, defendant entered a plea of guilty to all charges, reserving the right to appeal the court's denial of his motion to suppress. Defendant was sentenced to seventy to eighty-four months imprisonment and was ordered to pay a $100,000.00 fine. Facts pertinent to this appeal will be included as necessary in our analysis of the issues.

[1] Defendant contends the trial court erred in denying his motion to suppress the alleged contraband seized during the vehicle stop.

Defendant specifically argues that the officer did not have a reasonable and articulable suspicion to justify an investigatory stop, and the pat-down search exceeded its permissible scope. We disagree.

At the outset, the applicable standard in reviewing a trial court's ruling on a motion to suppress is that the trial court's findings of fact "are conclusive on appeal if supported by competent evidence, even if the evidence is conflicting." *State v. Eason,* 336 N.C. 730, 745, 445 S.E.2d 917, 926 (1994). "Conclusions of law that are correct in light of the findings are also binding on appeal." *State v. Howell,* 343 N.C. 229, 239, 470 S.E.2d 38, 43 (1996). "This deference is afforded the trial judge because he is in the best position to weigh the evidence, given that he has heard all of the testimony and observed the demeanor of the witnesses." *State v. Hughes,* 353 N.C. 200, 207, 539 S.E.2d 625, 631 (2000).

Unreasonable searches and seizures are prohibited by the Fourth Amendment to the Constitution of the United States and Section 20 of Article I of the North Carolina Constitution. *State v. Sanchez,* 147 N.C. App. 619, 623, 556 S.E.2d 602, 606 (2001), *disc. review denied,* 355 N.C. 220, 560 S.E.2d 358 (2002). "An investigatory stop must be justified by 'a reasonable suspicion, based on objective facts, that the individual is involved in criminal activity.' " *State v. Watkins,* 337 N.C. 437, 441, 446 S.E.2d 67, 70 (1994) (quoting *Brown v. Texas,* 443 U.S. 47, 51, 61 L. Ed. 2d 357, 362 (1979)). In ascertaining whether an officer had a reasonable suspicion to make an investigatory stop, the court must consider "the totality of the circumstances—the whole picture . . . ." *United States v. Cortez,* 449 U.S. 411, 417, 66 L. Ed. 2d 621, 629 (1981). "The stop must be based on specific and articulable facts, as well as the rational inferences from those facts, as viewed through the eyes of a reasonable, cautious officer, guided by his experience and training." *Watkins,* 337 N.C. at 441, 446 S.E.2d at 70 (citing *Terry v. Ohio,* 392 U.S. 1, 21-22, 20 L. Ed. 2d 889, 906 (1968); *State v. Thompson,* 296 N.C. 703, 706, 252 S.E.2d 776, 779 (1979)). Our Supreme Court has acknowledged that activity at an unusual hour is a factor that may be considered by a law enforcement officer in formulating a reasonable suspicion. *Id.* at 442, 446 S.E.2d at 70.

In the instant case, in ruling upon defendant's motion to suppress, the trial court concluded that in considering the totality of the circumstances, "the stopping and detention of the vehicle and the defendant was based upon a reasonable and articulable suspicion that a crime had likely occurred, was occurring, or about to occur, that supported such action." Included in the trial court's extensive

findings were the following facts: At approximately 2:00 a.m. on 22 June 2001, while on routine patrol in a marked patrol vehicle, Officer Davis observed and drove past a white male walking north on Trollingwood-Hawfields Road towards Interstate 85. Officer Davis immediately turned around and pulled over on the side of the road behind this pedestrian who, upon seeing the officer, ran towards the woods in the direction of Village Street Mobile Home Park. About four minutes later, while Officer Davis was driving through the mobile home park in an unsuccessful attempt to locate the pedestrian, Officer Sharpe contacted Officer Davis by radio and informed him that there was a motor vehicle parked on the right shoulder of Trollingwood-Hawfields Road near the mobile home park. Officer Davis then drove out of the mobile home park and observed a white vehicle leaving the right shoulder of Trollingwood-Hawfields Road. The white vehicle was located approximately fifty yards from where Officer Davis had observed the pedestrian flee from him earlier. Officer Davis followed this vehicle driven by defendant, a Hispanic male, and then initiated an investigatory stop by activating his blue light. The trial court additionally found the following to which defendant objects:

> Officer Davis testified that his initial investigatory traffic stop of the vehicle of the defendant was pursuant to Officer Davis's thoughts and his original suspicion that the vehicle may be related to the earlier pedestrian who had fled on foot upon approach of the officer. It appeared extremely suspicious to the officer considering all of the circumstances existing at the time; that is, Officer Davis was extremely suspicious that a crime had likely occurred, was occurring, or about to occur, and that the pedestrian and the vehicle and its occupants may be related thereto.

The trial court further found that the area in which defendant was stopped generally has no foot traffic at 2:00 a.m. and that at the time of the stop, there were no other motor vehicles other than defendant's vehicle and patrol cars in that area.

After reviewing the record, we conclude the trial court's findings of facts are supported by the evidence and these findings, in turn, support the trial court's conclusion that the investigatory stop "was based upon a reasonable and articulable suspicion that a crime had likely occurred, was occurring, or about to occur . . . ." Officer Davis indicated that he connected the vehicle he stopped

to the individual who had earlier fled from his presence by the following testimony:

> My original suspicion was that [defendant] being in the same immediate area as a subject that had just fled from me, I didn't know if maybe he was there to pick up the subject, if he was somehow related to that subject. The suspicion of him being pulled off on the side of the road on a section of the roadway that is very light traffic that time of the night, there's hardly no foot traffic, it's just extremely suspicious to me.

Officer Davis further testified that "I connected that vehicle to the subject that had ran [sic] from me, being in the immediate area of where I had somebody flee from me, pulled off on the side of the road. That's how I connected this vehicle to the subject that fled and that suspicion." It was reasonable for the officer to infer that the individual who had fled from him was in some way related to the stopped vehicle located a mere fifty yards from where the fleeing individual had been spotted. Moreover, the fact that the investigatory stop occurred around 2:00 a.m. when there is generally no foot traffic and there were no vehicles on the road except defendant's vehicle and patrol vehicles contributed to the officer's suspicion. Based on the totality of the circumstances, the trial court correctly concluded that the investigatory stop was justified by a reasonable suspicion that defendant was involved in criminal activity.

[2] Having determined that the investigatory stop and detention were proper, we must now determine whether the ensuing warrantless search of defendant passed constitutional muster. "[A]n officer may conduct a pat down search, for the purpose of determining whether the person is carrying a weapon, when the officer is justified in believing that the individual is armed and presently dangerous." *State v. Sanders*, 112 N.C. App. 477, 480, 435 S.E.2d 842, 844 (1993). To determine the reasonableness of a pat-down search, the applicable standard is " 'whether a reasonably prudent man in the circumstances would be warranted in the belief that his safety or that of others was in danger[.]' " *State v. Peck*, 305 N.C. 734, 742, 291 S.E.2d 637, 642 (1982) (quoting *Terry*, 392 U.S. at 27, 20 L. Ed. 2d at 909)). During a lawful pat-down search for weapons, if an officer discovers contraband, the officer may seize the item discovered. *State v. Benjamin*, 124 N.C. App. 734, 739, 478 S.E.2d 651, 654 (1996). This Court in *Benjamin* held that it was proper for an officer to make a brief inquiry as to the contents of an object that he felt while conducting a

lawful *Terry* search. *Id.* at 741, 478 S.E.2d at 655. This Court further held in *Benjamin* that the officer properly seized the contraband from the defendant's jacket pocket after the defendant had indicated that the pocket contained contraband. *Id.*

In the instant case, defendant argues the trial court erred in concluding that the pat-down of defendant and seizure of contraband were performed in a constitutionally permissible manner. Defendant does not, however, object to any of the court's findings pertaining to the pat-down and seizure.

The trial court found that after presenting Officer Davis with a Maryland driver's license, defendant began " 'digging' " in the glove compartment of his vehicle. Officer Davis asked defendant why he had pulled off the road and defendant responded that he was urinating. Defendant continued to "dig" in his glove compartment and reach around to several areas in the interior of the vehicle, including behind the passenger seat toward the floorboard area. Defendant exhibited a significant degree of nervousness while reaching around the interior of the vehicle. Out of concern for his own safety, Officer Davis asked defendant to exit the vehicle. While defendant was standing outside the vehicle, Officer Davis asked defendant if he had any weapons and defendant did not respond. Officer Davis then performed a pat-down search of defendant to check for weapons. During the pat-down, Officer Davis felt a large bulge in defendant's right pants' pocket and asked defendant what the object was. Defendant responded, " 'dope.' " Officer Davis retrieved a large amount of currency and two bags of cocaine from defendant's right pocket. Officer Davis testified that when he felt the large bulge in defendant's pocket, he thought it was a large amount of currency, which in his experience is often connected with illegal narcotics. Officer Davis arrested defendant and later conducted a search of defendant's vehicle.

We conclude defendant's failure to respond when he was asked if he had any weapons and defendant's nervous " 'digging' " in the vehicle provided ample justification for the limited search of his outer clothing. We additionally conclude, in following our holding in *Benjamin*, that the officer's brief inquiry as to the contents of the object in defendant's right pocket was not improper. Upon defendant's response that his right pocket contained " 'dope,' " the officer properly seized the currency and cocaine resulting in defendant's arrest. *See Benjamin*, 124 N.C. App. 734, 478 S.E.2d 651. Since we have determined that the stop and frisk were lawful, we also conclude that Officer Davis was justified in conducting a search of

defendant's vehicle incident to defendant's arrest, during which a handgun was seized. *See State v. VanCamp*, 150 N.C. App. 347, 352, 562 S.E.2d 921, 926 (2002).

For the foregoing reasons, we affirm the trial court's denial of defendant's motion to suppress the alleged contraband seized during the investigatory stop.

Affirmed.

Judges TIMMONS-GOODSON and ELMORE concur.