STATE OF NORTH CAROLINA v. DWAYNE RUSSELL EDWARDS

No. COA03-736

(Filed 4 May 2004)

**1. Search and Seizure— investigatory stop of vehicle—protective search—motion to suppress**

The trial court did not err in a case arising out of multiple sexual assaults by denying defendant's motion to suppress evidence seized during a warrantless search of his vehicle, because: (1) the trial court made ample findings of fact upon which to conclude that based on the totality of circumstances, the officers were warranted in making an investigatory stop of defendant's vehicle, and given the actions of defendant and the details of the circumstances, the officers were warranted in checking defendant and his immediate surroundings for evidence of a crime; (2) defendant was already under surveillance, and activity at an unusual hour is a factor that may be considered by a law enforcement officer in formulating reasonable suspicion; (3) defendant's vehicle had an expired Illinois registration plate, which was sufficient in and of itself to warrant initially stopping defendant; (4) a protective search of the vehicle was justified based on the facts that the officers saw defendant reach under his car seat and then exit the vehicle with what appeared to be something in his hand, defendant repeatedly refused to comply with the officers' orders, and the officers heard on the alert tone that the victim's assailant had a handgun; and (5) despite the fact that defendant was handcuffed and sitting on the curb when the handgun was found,

defendant was still in close proximity to the interior of the vehicle, and the possibility of him gaining immediate control of the handgun while handcuffed or once the handcuffs were removed was still present.

**2. Search and Seizure— search warrant—motion to suppress**

The trial court did not err in a case arising out of multiple sexual assaults by denying defendant's motions to suppress the evidence seized pursuant to search warrants that were based on the initial warrantless search of his vehicle, because the magistrate had sufficient probable cause to issue search warrants for defendant's home, business, vehicle, and person.

**3. Sentencing— inconsistencies—consolidation—remand for entry of formal judgment**

Several of defendant's judgments must be remanded to determine the existence of, or to correct, apparent inconsistencies concerning whether the trial court ultimately elected not to consolidate several of the sentences including the felonious breaking and entering conviction in 01CRS050164 and his common law robbery conviction in 01CRS050174, as well as defendant's second-degree kidnapping conviction in 01CRS050134 and his first-degree burglary conviction in 01CRS050135. Further, the case is remanded for formal entry of judgment as to the second-degree sexual offense conviction.

**4. Rape; Sexual Offenses— short-form indictments—first-degree rape—first-degree sexual offense—constitutionality**

The trial court did not err by denying defendant's motion to dismiss the short-form indictments that charged him with first-degree rape and first-degree sexual offense, because the short-form indictments have been constitutionally upheld for use with these type of offenses.

Judge WYNN concurring in result only.

Appeal by defendant from judgments entered 6 June 2002 by Judge John R. Jolly, Jr. in Orange County Superior Court. Heard in the Court of Appeals 16 March 2004.

*Attorney General Roy A. Cooper, III, by Assistant Attorney General Tina A. Krasner, for the State.*

*Duncan B. McCormick for defendant-appellant.*

HUNTER, Judge.

Dwayne Russell Edwards ("defendant") appeals judgments aris-ing out of three sexual assaults. Specifically, he takes issue with (I) evidence seized during a warrantless search of his vehicle, (II) evi-. dence seized pursuant to search warrants that were issued as a result of the warrantless vehicle search, (III) inconsistences between sev-eral of the written judgments and the judgments imposed in open court, and (IV) two short-form indictments that allegedly violated his constitutional rights. For the reasons stated herein, we conclude the trial court's rulings as to the searches and short-form indictments were not in error, but several of defendant's judgments must be remanded to determine the existence of or correct apparent incon-sistencies. We also remand one of defendant's convictions for formal entry of judgment.

On 25 June 2001, defendant was indicted by an Orange County Grand Jury on three counts of first degree rape, four counts of first degree sexual offense, one count of attempted first degree sexual offense, three counts of second degree sexual offense, three counts of robbery with a dangerous weapon, one count of second degree kid-napping, two counts of first degree burglary, one count of felonious breaking and entering, one count of felonious larceny, and one count of common law robbery. Prior to trial, defendant filed several motions to suppress evidence seized during a warrantless search of his ve-hicle, as well as subsequent searches based on the evidence seized during that warrantless search. The motions were denied. Defendant's trial began on 28 May 2002, and the jury returned verdicts finding defendant guilty of all charges on 6 June 2002. Defendant was sentenced to 3,265 to 4,073 months imprisonment.

The evidence offered at trial supporting defendant's convictions was as follows. On 23 December 2000, Victim R was sexually assaulted in her Rock Haven Road apartment in Carrboro after returning home from work. Victim R was taken to the bathroom and forced to perform fellatio on her assailant several times while he fondled her vaginal area. Afterwards, the assailant told Victim R to get in the shower and turn on the water. Before leaving, the assailant stole several items from Victim R's apartment, including cash and a cellular phone belonging to her roommate.

Victim R did not get a close look at her assailant's face. However, she described him as being a black male, approximately 5'10" in height with a medium build, wearing cream-colored gloves and a

toboggan-type head covering. She also said that her assailant had a distinctive "baby powder" smell.

In the early morning hours of 26 December 2000, Victim E was sexually assaulted in her Carrboro apartment located near Victim R's apartment. Victim E was awakened by a man holding a handgun and taken to the bathroom. There, Victim E was forced to perform fellatio on her assailant before he penetrated her vaginally. Afterwards, the assailant turned on the water in the shower and pushed Victim E into the tub.

Victim E was also unable to describe her assailant's face, but she did describe him as being approximately six feet tall, strong, and muscular. She further described the handgun used by the assailant as having two green dots. Finally, Victim E indicated that the assailant was clean smelling, having a scent similar to defendant's, a former co-worker of Victim E's who lived in Rock Creek Apartments.

Victim L1 was sexually assaulted in Chapel Hill at approximately 3:00 a.m. on the morning of 9 January 2001. Victim L1 and her boyfriend, Victim L2, were awakened by a man holding a gun to Victim L2's head. Victim L2 was told to get into the closet. The assailant then forced Victim L1 to perform fellatio on him before having vaginal intercourse with her. Afterwards, the assailant took money from Victim L2's wallet and from the closet of Victim L1's roommate. He placed Victim L1 in the closet with Victim L2 before leaving.

Victim L1 described her assailant as a black male, approximately six feet tall with a muscular build, wearing gloves and some type of head gear over a bald head. Victim L1 was shown several photographs, one of which was of defendant, but was unable to identify her assailant. However, she did recognize defendant as someone who had previously attempted to initiate a relationship with her roommate.

Due to the similarities between the 23 and 26 December 2000 assaults, the Carrboro Police Department organized a surveillance of defendant prior to the 9 January 2001 assault. Officers Seth Everett ("Officer Everett") and Michael Mikels ("Officer Mikels") participated in that surveillance and were doing so in separate vehicles on the morning of 9 January 2001. At approximately 2:50 a.m., Officer Everett noticed that defendant's vehicle, a Chevrolet Cavalier Z24 with an expired Illinois registration plate, was not in its parking place

at defendant's apartment complex. It had started snowing at approximately 1:00 a.m, and tire impressions in the snow indicated that defendant's vehicle had exited the complex headed towards Chapel Hill. At approximately 4:03 a.m., Officers Everett and Mikels heard an alert tone from the Chapel Hill police that Victim L1 had been sexually assaulted by a tall, large, black male brandishing a handgun and wearing gloves and some type of headgear. The officers immediately began looking for defendant.

After it started snowing, the officers saw no other vehicles on the road that night other than patrol cars. However, within minutes of receiving word of Victim L1's assault, defendant's vehicle passed directly in front of Officer Mikels' vehicle going towards Rock Creek Apartments from the direction of Chapel Hill. Officer Mikels radioed Officer Everett, who subsequently came up behind defendant's vehicle flashing his blue lights.

Defendant stopped his vehicle at the entrance of Rock Creek Apartments, and the officers saw him immediately put both of his hands underneath his seat. Defendant's door then "flew open and he jumped out." The officers ordered defendant back in his vehicle several times, but eventually drew their weapons on defendant after he failed to comply. Defendant was told to put his hands up, during which time the officers saw what they believed to be something in his left hand. Defendant proceeded to drop and raise his hands several times.

The officers approached defendant's vehicle and saw in plain view a large amount of money on the passenger's seat, as well as cream colored gloves and some type of headgear on the floorboard. Believing defendant had a gun in his vehicle, Officer Everett handcuffed defendant and told him to sit on the curb in front of his vehicle. Officer Everett explained to defendant that he had an expired license plate and that the officers were investigating a possible sexual assault that occurred in Chapel Hill. While defendant proceeded to produce a current vehicle sticker/registration, Officer Mikels looked under the front seat of defendant's vehicle and discovered a handgun with green night sights on it. Defendant was then told he was being charged with carrying a concealed weapon.

Based on the seizure of the handgun from defendant's vehicle and his subsequent arrest for carrying a concealed weapon, officers from the Carrboro and Chapel Hill Police Departments obtained search warrants for defendant's home, business, and vehicle. The officers also obtained hairs and bodily fluids from defendant to establish a

DNA profile, which matched the assailant's DNA found on the victims. Further, the cellular phone taken from Victim R's house was found in defendant's place of business.

I.

[1] Defendant argues the trial court erred by denying his motion to suppress evidence seized during the warrantless search of his vehicle.

> [A] trial court's findings of fact in a suppression hearing are binding on the appellate courts when supported by competent evidence. This Court must determine whether these findings of fact support the trial court's conclusions of law, and if so, the trial court's conclusions of law are binding on appeal.

*State v. West*, 119 N.C. App. 562, 565, 459 S.E.2d 55, 57 (1995) (citation omitted). Defendant contends the findings of fact in the trial court's 24 January 2004 order did not support the conclusions that the search and seizure of the handgun from his vehicle was permitted as either a search pursuant to an investigatory stop or incident to a lawful arrest. Having determined that the search and seizure was warranted on the basis of at least one of these conclusions, we hold the motion to suppress was properly denied.

"Article I, Section 20 of our North Carolina Constitution, as does the Fourth Amendment to the United States Constitution, protects against *unreasonable* searches and seizures." *State v. McRae*, 154 N.C. App. 624, 628, 573 S.E.2d 214, 217 (2002). "It applies to seizures of the person, including brief investigatory detentions such as those involved in the stopping of a vehicle." *State v. Watkins*, 337 N.C. 437, 441, 446 S.E.2d 67, 69-70 (1994). With respect to an investigatory stop of a vehicle, that stop "must be justified by 'a reasonable suspicion, based on objective facts, that the individual is involved in criminal activity.' " *Id.* at 441, 446 S.E.2d at 70 (citation omitted). Further, our federal and state courts have held that:

> A court must consider "the totality of the circumstances—the whole picture" in determining whether a reasonable suspicion to make an investigatory stop exists. The stop must be based on specific and articulable facts, as well as the rational inferences from those facts, as viewed through the eyes of a reasonable, cautious officer, guided by his experience and training. The only requirement is a minimal level of objective justification, something more than an "unparticularized suspicion or hunch."

*Id.* at 441-42, 446 S.E.2d at 70 (citations omitted).

In the case *sub judice*, the trial court made ample findings of fact upon which to conclude that "based on the totality of the circumstances, [the officers] were warranted in making an investigatory stop of the defendant's vehicle[]" and, "[g]iven the actions of the defendant and the details of the circumstances, . . . check the defendant and his immediate surroundings for evidence of [a] crime." The evidence established that when Officers Everett and Mikels learned that Victim L1 had been sexually assaulted in Chapel Hill by a man matching defendant's general description, they already suspected defendant of two prior sexual assaults. Since defendant was under surveillance, the officers knew he was not at home at the time of Victim L1's assault. Minutes after receiving the alert tone however, the officers saw defendant coming from the direction of Chapel Hill—it was approximately 4:00 a.m., snowing, and no other vehicles were seen on the road by the officers. "Our Supreme Court has acknowledged that activity at an unusual hour is a factor that may be considered by a law enforcement officer in formulating a reasonable suspicion." *State v. Martinez*, 158 N.C. App. 105, 107, 580 S.E.2d 54, 56, *appeal dismissed and disc. review denied*, 357 N.C. 466, 586 S.E.2d 773 (2003). The officers also knew that defendant's vehicle had an expired Illinois registration plate, which was sufficient in and of itself to warrant initially stopping defendant.

Nevertheless, once defendant was stopped, there were additional "specific and articulable facts" warranting the subsequent protective search of his vehicle. The evidence showed that the officers saw defendant reach under the front seat of his vehicle and then exit the vehicle with what appeared to be something in his left hand. The officers drew their weapons on defendant after he repeatedly refused to comply with their orders to get back in his vehicle and keep his hands up. As they approached defendant, the officers saw nothing in his hands; but a large amount of money, cream colored gloves, and headgear were seen in plain view inside the vehicle. Having heard on the alert tone that Victim L1's assailant had a handgun and believing that defendant may have placed a handgun under his seat, Officer Everett arrested defendant and Officer Mikels conducted a protective search of the vehicle.

> Our past cases indicate . . . that protection of police and others can justify protective searches when police have a reasonable belief that the suspect poses a danger, that roadside encounters between police and suspects are especially hazardous, and that danger may arise from the possible presence of weapons in the

area surrounding a suspect. These principles compel our conclusion that the search of the passenger compartment of an automobile, limited to those areas in which a weapon may be placed or hidden, is permissible if the police officer possesses a reasonable belief based on "specific and articulable facts which, taken together with the rational inferences from those facts, reasonably warrant" the officer in believing that the suspect is dangerous and the suspect may gain immediate control of weapons.

*Michigan v. Long*, 463 U.S. 1032, 1049, 77 L. Ed. 2d 1201, 1219-20 (1983) (footnote omitted). Despite defendant being handcuffed and sitting on the curb when the handgun was found, defendant was still in close proximity to the interior of the vehicle, and the possibility of him gaining immediate control of the handgun while handcuffed or once the handcuffs were removed was still present. Thus, based on the totality of the circumstances, the officers had reasonable suspicion to warrant an investigatory stop of defendant and conduct a protective, warrantless search of his vehicle. Accordingly, the motion to suppress was properly denied.

II.

**[2]** Defendant argues the trial court erred in denying his motions to suppress the evidence seized pursuant to search warrants that were based on the initial, warrantless search of his vehicle. We disagree.

When considering an application for a search warrant, magistrates are to determine whether probable cause exists to issue the warrant based on the totality of the circumstances. *State v. McLean*, 120 N.C. App. 838, 841, 463 S.E.2d 826, 829 (1995). " 'The standard for a court reviewing the issuance of a search warrant is "whether there is substantial evidence in the record supporting the magistrate's decision to issue the warrant." ' " *State v. Reid*, 151 N.C. App. 420, 423, 566 S.E.2d 186, 189 (2002) (citation omitted). Here, the magistrate had sufficient probable cause to issue search warrants for defendant's home, business, vehicle, and person based on the substantial evidence detailed in Part I of this opinion. Therefore, defendant's argument is overruled.

III.

**[3]** Defendant's next two assigned errors take issue with inconsistencies in some of his sentences and judgments. These assigned errors are based on the following: (1) in open court the trial court *initially consolidated* and imposed a single sentence of sixteen to

twenty months for defendant's felonious breaking and entering conviction in 01CRS050164 and his common law robbery conviction in 01CRS050174; but, when the judgment in 01CRS050174 was imposed, it did not provide that the sentence was to run consecutively with the first degree sexual offense sentence imposed in 01CRS050172 pursuant to N.C. Gen. Stat. § 15A-1354(a) (2003) ("[i]f not specified or not required by statute to run consecutively, sentences shall run concurrently"); and (2) in open court the trial court *initially consolidated* and imposed a single sentence of 103-133 months for defendant's second degree kidnapping conviction in 01CRS050134 and his first degree burglary conviction in 01CRS050135; however, the judgment that was imposed as to these convictions resulted in separate sentences running consecutively. Defendant contends, and the State concedes, that these judgments were preceded by statements made by the prosecutor that were contrary to the laws on structured sentencing.

"[I]n situations where a defendant is convicted of two or more offenses, the General Assembly has given the trial court discretion to consolidate the offenses into a single judgment." *State v. Tucker*, 357 N.C. 633, 636, 588 S.E.2d 853, 855 (2003). *See also* N.C. Gen. Stat. § 15A-1340.15(b) (2003). Here, it is difficult to clearly determine whether the trial court ultimately elected not to consolidate the sentences (1) based on the prosecutor's statements, or (2) as an exercise of its discretion. Therefore, we remand these sentences to the trial court to make that determination and sentence defendant accordingly. Morever, we note that the trial transcript indicates that no judgment was entered in open court as to defendant's second degree sexual offense conviction in 01CRS050170. Thus, we also remand this conviction for formal entry of judgment.

V.

[4] Finally, defendant argues the trial court erred in denying his motion to dismiss the short-form indictments that charged him with first degree rape and first degree sexual offense because the indictments violated his constitutional rights. However, our Courts hold, and defendant acknowledges, that short-form indictments have been constitutionally upheld for use with these types of offenses. *State v. O'Hanlan*, 153 N.C. App. 546, 550-51, 570 S.E.2d 751, 755 (2002), *cert. denied*, 358 N.C. 158, —— S.E.2d —— (5 February 2004). Thus, this argument is without merit.

No error; remand for resentencing and entry of judgment.

Judge TYSON concurs.

Judge WYNN concurs in the result only.