STATE OF NORTH CAROLINA v. PHILLIP LEE SNIPES

No. COA04-664

(Filed 15 February 2005)

**1. Appeal and Error— plain error review—defendant's capacity to proceed**

Recognizing that a conviction cannot stand where the defendant lacks the capacity to defend himself, the Court of Appeals used its discretion under N.C.R. App. P. 2 (2004) to apply plain

**STATE v. SNIPES**

[168 N.C. App. 525 (2005)]

error analysis to the question of whether defendant had the capacity to proceed.

**2. Criminal Law— defendant's capacity to proceed—plain error review—evidence of incompetency insufficient**

There was insufficient evidence of incompetency to require a sua sponte competency hearing where defendant presented no evidence of previous psychological treatment or medical records regarding his capacity to proceed with trial, and his trial demeanor was rational and obedient. Although some of defendant's testimony included rambling and irrelevant statements, the record as a whole indicates that he was oriented to his present circumstances and knew the offenses with which he was charged.

**3. Stalking— sufficiency of evidence**

The State offered sufficient evidence to support a charge of felony stalking and the trial court did not err by denying defendant's motion to dismiss. N.C.G.S. § 14-277.3.

**4. Criminal Law— victim's daughter—sitting in courtroom with doll**

There was no plain error in a stalking and assault prosecution where the trial court allowed the victim's daughter to sit in the courtroom with a doll which was part of a school assignment, and which occasionally cried. The court made appropriate arrangements regarding the presence of the doll prior to trial, and its comments about the doll during trial were wholly unrelated to any fact at issue in defendant's case.

Appeal by defendant from judgment entered 21 November 2003 by Judge Ola M. Lewis in Lee County Superior Court. Heard in the Court of Appeals 26 January 2005.

*Attorney General Roy Cooper, by Assistant Attorney General Richard J. Votta, for the State.*

*George E. Kelly, III, for defendant-appellant.*

TIMMONS-GOODSON, Judge.

Phillip Lee Snipes ("defendant") appeals his convictions for two counts of assault with a deadly weapon inflicting serious injury and one count of felony stalking. For the reasons discussed herein, we

hold that defendant received a trial free of prejudicial error, but we remand the case for the correction of clerical errors.

The State's evidence presented at trial tends to show the following: On 13 July 2003, Bridget Roseboro ("Roseboro") was standing in front of her apartment when defendant approached her with what she believed to be a knife in his hand. Roseboro turned and knocked on the front door of a nearby apartment occupied by Fletcher Quick ("Quick"). As Roseboro knocked on Quick's front door, defendant attacked Roseboro with the knife. During the altercation, defendant stabbed Roseboro with the knife several times in her head and hand, and he remarked, "Bitch, didn't I tell you I was going to get you?"

After hearing Roseboro knock on his front door, Quick exited his residence and saw defendant "beating" Roseboro with a "silver weapon." Quick grabbed defendant, and the two men "went down to the ground." Defendant stood up and began beating Quick with "a different weapon" which Quick believed was a "piece of iron." Defendant struck Quick several times in the head, side, and arm with the weapon, causing Quick's head to bleed. Defendant eventually "ran off" when a nearby neighbor informed Quick that the police were on their way.

After law enforcement and medical personnel arrived, Roseboro and Quick were transported to Central Carolina Hospital. As a result of her injuries, Roseboro received seven staples in her head and a cast for a broken finger on her hand. As a result of his injuries, Quick received five staples in his head.

Defendant was apprehended and arrested the following day. After being advised of his rights, defendant offered the following statement to law enforcement officials:

On 7-13-2003, around 12:30 to 1:30 AM I was walking down Washington Avenue when Bridget Roseboro and Fletcher Quick came up to me and started wailing on my head. I started fighting back. After I got them off of me, I left and went home.

On 4 August 2003, defendant was indicted for two counts of assault with a deadly weapon inflicting serious injury and one count of felonious stalking. Defendant's trial began 18 November 2003. On 21 November 2003, the jury returned a verdict of guilty for each charge. The trial court determined that defendant had a prior felony record level II and a prior misdemeanor record level III, and on 21 November 2003, the trial court sentenced defendant

to a total of fifty-eight to eighty-eight months incarceration. Defendant appeals.

We note initially that defendant's brief contains arguments supporting only three of his four original assignments of error. Pursuant to N.C.R. App. P. 28(b)(6) (2004), the omitted assignment of error is deemed abandoned. Therefore, we limit our present review to those assignments of error properly preserved by defendant for appeal.

The issues on appeal are whether the trial court erred by: (I) failing to investigate defendant's capacity to proceed at trial; (II) denying defendant's motion to dismiss the charge of felony stalking; and (III) allowing Roseboro's daughter to sit in the courtroom with a doll and commenting on the doll's presence.

[1] Defendant first argues that the trial court erred by failing to investigate defendant's capacity to proceed. Defendant asserts that the trial court was required to hold a hearing to determine whether defendant had the mental capacity necessary to proceed with trial. We disagree.

We note initially that defendant assigns plain error to this issue. Our appellate courts have traditionally applied plain error analysis only to jury instructions and evidentiary matters. *State v. Wiley*, 355 N.C. 592, 615-16, 565 S.E.2d 22, 39-40 (2002). However, recognizing that "a conviction cannot stand where [the] defendant lacks [the] capacity to defend himself[,]" *State v. Young*, 291 N.C. 562, 568, 231 S.E.2d 577, 580 (1977), in our discretion pursuant to N.C.R. App. P. 2 (2004), we choose to address the merits of defendant's argument.

[2] N.C. Gen. Stat. § 15A-1001(a) (2003) provides as follows:

No person may be tried, convicted, sentenced, or punished for a crime when by reason of mental illness or defect he is unable to understand the nature and object of the proceedings against him, to comprehend his own situation in reference to the proceedings, or to assist in his defense in a rational or reasonable manner. This condition is hereinafter referred to as "incapacity to proceed."

N.C. Gen. Stat. § 15A-1002 (2003) governs the determination of a defendant's capacity to proceed. Subsection (a) of the statute provides as follows:

The question of the capacity of the defendant to proceed may be raised at any time on motion by the prosecutor, the defendant, the

defense counsel, or the court. The motion shall detail the specific conduct that leads the moving party to question the defendant's capacity to proceed.

N.C. Gen. Stat. § 15A-1002(a). Pursuant to subsection (b), the trial court is required to hold a hearing to determine the defendant's capacity to proceed if his or her capacity "is questioned[.]" N.C. Gen. Stat. § 15A-1002(b). Our Supreme Court has recognized that " 'a defendant may waive the benefit of statutory or constitutional provisions by express consent, failure to assert it in apt time, or by conduct inconsistent with a purpose to insist upon it.' " *Young*, 291 N.C. at 567, 231 S.E.2d at 580 (quoting *State v. Gaiten*, 277 N.C. 236, 239, 176 S.E.2d 778, 781 (1970)). However, the Court has also recognized that " 'a trial court has a constitutional duty to institute, *sua sponte*, a competency hearing *if there is substantial evidence before the court* indicating that the accused may be mentally incompetent.' " *Young*, 291 N.C. at 568, 231 S.E.2d at 581 (quoting *Crenshaw v. Wolff*, 504 F. 2d 377, 378 (8th Cir. 1974), *cert. denied*, 420 U.S. 966, 43 L. Ed. 2d 445 (1975)); *see Wolf v. United States*, 430 F. 2d 443, 444 (10th Cir. 1970) ("bona fide doubt" as to competency).

In the instant case, on 30 July 2003, defendant's trial counsel filed a motion questioning defendant's capacity to proceed with the trial. Defendant concedes that he waived the statutory right to question his competency by withdrawing the motion in open court on 20 August 2003. Nevertheless, defendant asserts that the trial court was required to conduct a competency hearing in light of *Young* and other relevant case law. Because we conclude that the evidence of incompetency in the instant case was insufficient to require a *sua sponte* competency hearing, we hold that the trial court did not err.

" 'Evidence of a defendant's irrational behavior, his demeanor at trial, and any prior medical opinion on competence to stand trial are all relevant' to a bona fide doubt inquiry." *State v. McRae*, 139 N.C. App. 387, 390, 533 S.E.2d 557, 559 (2000) (quoting *Drope v. Missouri*, 420 U.S. 162, 180, 43 L. Ed. 2d 103, 118 (1975)). "There are, of course, no fixed or immutable signs which invariably indicate the need for further inquiry to determine fitness to proceed; the question is often a difficult one in which a wide range of manifestations and subtle nuances are implicated." *Drope*, 420 U.S. at 180, 43 L. Ed. 2d at 118. In the instant case, defendant presented no evidence of previous psychological treatment or medical records regarding his capacity to proceed with trial, and his trial demeanor was rational and obedient.

Defendant consistently answered the trial court's pre-trial questions and obeyed the trial court's request to slow the pace of his speech. Defendant waited for the trial court's permission to leave the witness stand during his testimony, and he returned to the witness stand when instructed by the trial court to do so. During his testimony, defendant consistently denied carrying a weapon during the altercation with Roseboro and Quick, and he offered a consistent version of the altercation as well as rationale for his actions.

Although some of defendant's answers during his trial testimony include rambling, irrelevant statements, after reviewing the record as a whole, we conclude that defendant was "accurately oriented regarding his present circumstances" and "knew the offenses with which he was charged." *State v. Hepinstall*, 309 N.C. 231, 236, 306 S.E.2d 109, 112 (1983). We are unable to conclude that the trial court had "substantial evidence" before it "indicating that defendant 'lack[ed] the capacity to understand the nature and object of the proceedings against him, to consult with counsel, and to assist in preparing his defense' at the time his trial commenced." *State v. King*, 353 N.C. 457, 467, 546 S.E.2d 575, 585 (2001) (quoting *Drope*, 420 U.S. at 171, 43 L. Ed. 2d at 113) (alteration in original), *cert. denied*, 534 U.S. 1147, 151 L. Ed. 2d 1002, *reh'g denied*, 535 U.S. 1030, 152 L. Ed. 2d 646 (2002). Therefore, we conclude that the trial court was not required to conduct a competency hearing *sua sponte*, and, accordingly, we overrule defendant's first argument.

[3] Defendant next argues that the trial court erred by denying his motion to dismiss the felony stalking charge. Defendant contends that the State failed to provide sufficient evidence tending to show that he feloniously stalked Roseboro between the dates alleged in the indictment. We disagree.

When ruling on a motion to dismiss, the trial court must determine whether there is sufficient evidence of each essential element of the offense charged. *State v. Benson*, 331 N.C. 537, 544, 417 S.E.2d 756, 761 (1992). The trial court views the evidence in the light most favorable to the State, and the trial court gives the State the benefit of all reasonable inferences arising from the evidence. *Id.* "Contradictions and discrepancies do not warrant dismissal of the case but are for the jury to resolve. The test for sufficiency of the evidence is the same whether the evidence is direct or circumstantial or both." *State v. Barnes*, 334 N.C. 67, 75, 430 S.E.2d 914, 918-19 (1993) (citations omitted).

In the instant case, defendant was charged with violation of N.C. Gen. Stat. § 14-277.3, which provides as follows:

(a) Offense.—A person commits the offense of stalking if the person willfully on more than one occasion follows or is in the presence of, or otherwise harasses, another person without legal purpose and with the intent to do any of the following:

  (1) Place that person in reasonable fear either for the person's safety or the safety of the person's immediate family or close personal associates.

  . . . .

(b) Classification.—A violation of this section is a Class A1 misdemeanor. . . . A person who commits the offense of stalking when there is a court order in effect prohibiting similar behavior by that person is guilty of a Class H felony.

N.C. Gen. Stat. § 14-277.3 (2003). The indictment in the instant case charged defendant with stalking Roseboro between the dates of 17 October 2002 and 13 July 2003, for the purpose of putting her "in reasonable fear . . . for her safety[.]" After reviewing the record, we conclude that the State offered sufficient evidence at trial to support this charge.

At trial, the State offered evidence tending to show that on 25 September 2002, Roseboro obtained a "no contact" order that required defendant to refrain from contacting Roseboro. The "no contact" order was continued by the trial court on 16 October 2002. At trial, Roseboro testified that as she was walking to her cousin's residence one morning after the "no contact" order was continued, defendant "c[a]me riding up on on his bicycle . . . . [and] follow[ed] [her] all the way to her [cousin's] house." Roseboro testified that defendant followed her for approximately one block and communicated with her. Roseboro testified that

I asked him why he was bothering me. He couldn't give me no definite answer. I told him, "I don't bother you. So why don't you just leave me alone." He said, "Okay." But he continued on.

Roseboro further testified that she would encounter defendant riding his bicycle "[e]very morning" as she walked to her cousin's house, but that "sometime[s] [she] would beat [defendant] down there to [her] cousin's house because [she] would leave a little bit earlier." Roseboro testified that defendant "would make contact" with

her and would travel in the "[s]ame direction" as she was traveling. Roseboro testified that when she would reach her cousin's house, defendant would "leave." When asked how many times she saw defendant between 17 October 2002 and 13 July 2003, Roseboro testified that she would see defendant "near about every day," and that although defendant did not "[r]eally" communicate with her, he followed her "about 50" times, as close as "[l]ike from me to this young man right here [indicating the trial court reporter]." Roseboro testified that she would "always get a ride back [from her cousin's residence] because it would be dark[,]" and she stated that she "felt like if you're not trying to be bothering with anybody, why would you follow them all the time?" Roseboro further testified that on the night of the altercation, defendant approached her with a knife, causing her to immediately begin knocking on the front door of a nearby residence. Sanford Police Department Detective Vinnie Frazer ("Detective Frazer") testified that when he interviewed Roseboro the night of the altercation, "[s]he was very upset, crying, stated she was in fear for her life." In light of the foregoing evidence, we conclude that the State presented sufficient evidence tending to show that defendant stalked Roseboro during the time periods alleged in the indictment. Thus, we hold that the trial court did not err in denying defendant's motion to dismiss the charge of felony stalking. Furthermore, while we recognize that defendant also argues in his brief that the trial court erred in instructing the jury regarding the charge, we note that defendant did not object to the relevant portion of the trial court's instruction or assign plain error to the instruction on appeal. Therefore, defendant has failed to properly preserve this issue for appeal. See N.C.R. App. P. 10(b) (2004). Accordingly, we overrule defendant's second argument.

[4] Defendant's final argument is that the trial court committed plain error by allowing Roseboro's daughter to sit in the courtroom with a doll and by commenting on the doll's presence. As discussed above, our appellate courts have traditionally applied plain error analysis only to jury instructions and evidentiary matters. *Wiley,* 355 N.C. at 615-16, 565 S.E.2d at 39-40. Nevertheless, in our discretion pursuant to N.C.R. App. P. 2, we have chosen to review defendant's assignment of error, and we conclude that the trial court did not err.

The record reflects that Roseboro's daughter, Kendra West ("West"), was present at defendant's trial and holding a doll assigned to her in a school project. Prior to trial, the trial court gave the following instructions to the jury pool:

And I would also like to introduce Ms. Kendra West. Ms. Kendra, would you please stand, please? Turn around so that the jury can see you. Ms. Kendra is the daugther of Ms. Bridget Roseboro. Thank you. And, as you will observe, she's holding a baby doll, and this is a school project. So, if the baby doll cries we are going to ignore it—okay—and keep going.

During the course of the trial, West's doll cried three times, and each time West immediately left the courtroom with the doll. Following the second interruption, the trial court said, "Makes me not want to have any children." Following the third interruption, the trial court said, "School project." Defendant contends that the trial court's comments amount to an impermissible expression of opinion which fundamentally prejudiced his trial. We disagree.

"The trial judge . . . has the duty to supervise and control a defendant's trial . . . to ensure fair and impartial justice for both parties." *State v. Fleming*, 350 N.C. 109, 126, 512 S.E.2d 720, 732, *cert. denied*, 528 U.S. 941, 145 L. Ed. 2d 274 (1999). In performing its duties, the trial court's position as the " 'standard-bearer of impartiality' " requires that " 'the trial judge must not express any opinion as to the weight to be given to or credibility of any competent evidence presented before the jury.' " *State v. Larrimore*, 340 N.C. 119, 154-55, 456 S.E.2d 789, 808 (1995) (quoting *State v. Harris*, 308 N.C. 159, 167, 301 S.E.2d 91, 97 (1983)); *see* N.C. Gen. Stat. § 15A-1222 (2003) (stating that the trial court "may not express during any stage of the trial, any opinion in the presence of the jury on any question of fact to be decided by the jury."). "In evaluating whether a judge's comments cross into the realm of impermissible opinion, a totality of the circumstances test is utilized." *Larrimore*, 340 N.C. at 155, 456 S.E.2d at 808.

In the instant case, we are not convinced that the trial court's comments or conduct related to the doll had any influence on the outcome of defendant's case. The trial court made appropriate arrangements regarding the presence of the doll prior to trial, and its comments regarding the doll's interruptions were wholly unrelated to any fact at issue in defendant's case. We note that "[n]ot every disruptive event occurring during the course of the trial requires the court automatically to declare a mistrial." *State v. Dais*, 22 N.C. App. 379, 384, 206 S.E.2d 759, 762, *cert. denied and appeal dismissed*, 285 N.C. 664, 207 S.E.2d 758 (1974). "Ordinarily, the manner in which a trial is conducted rests in the discretion of the court, '[so] long as defendant's rights are scrupulously afforded him.' " *Id.* (quoting *State*

*v. Perry*, 277 N.C. 174, 177, 176 S.E.2d 729, 731 (1970)). "This principle applies to control by the court of the conduct of spectators during the course of trial." *Davis*, 22 N.C. App. at 384, 206 S.E.2d at 762. In the instant case, we conclude that the trial court's conduct related to the doll's presence in the courtroom did not infringe upon defendant's right to an impartial trial. Therefore, the trial court did not err by allowing Roseboro's daughter to sit in the courtroom with the doll and by commenting on the doll's presence.

While we recognize that defendant also asserts in his brief that the trial court's comments regarding media coverage were impermissible, we note that defendant failed to object to these comments at trial, and he failed to assign error to them on appeal. Therefore, we decline to address the merits of this assertion. *See* N.C.R. App. P. 10(b). Accordingly, we overrule defendant's final argument.

In light of the foregoing conclusions, we hold that defendant received a trial free of prejudicial error. However, we note that each of the judgment and commitment forms contains a clerical error. On each form, the trial court has checked the box indicating that it "[i]mposes the prison term pursuant to a plea arrangement as to sentence under Article 58 of G.S. Chapter 15A." Our review of the record reveals that defendant pled not guilty to each of the offenses for which he was convicted. Therefore, we remand this case to the trial court for correction of these clerical errors.

No error at trial; remand for correction of clerical errors.

Judges HUDSON and STEELMAN concur.