IN THE COURT OF APPEALS OF NORTH CAROLINA

 No. COA16-823

 Filed: 4 April 2017

Cumberland County, No. 14 JA 392

IN THE MATTER OF: J.K.

 Appeal by respondent-mother from order entered 17 May 2016 by Judge Cheri

L. Siler-Mack in District Court, Cumberland County. Heard in the Court of Appeals

13 March 2017.

 Christopher L. Carr, for petitioner-appellee Cumberland County Department of
 Social Services and Beth A. Hall, for guardian ad litem.

 Robert W. Ewing for respondent-appellant-mother.

 STROUD, Judge.

 Respondent-mother appeals from a permanency planning order and a custody

order, both entered the same day, both of which grant legal and physical custody of

her daughter to respondent-father. We remand the permanency planning order for

correction of a clerical error and reverse and remand the custody order since it does

not comply with the requirements of North Carolina General Statute § 7B-911 for

termination of juvenile court jurisdiction and entry of a civil custody order enforceable

and modifiable under North Carolina General Statute Chapter 50. We therefore

remand to the trial court for entry of a new order in accord with North Carolina

General Statute § 7B-911, if such an order is still appropriate, or for entry of any
 IN RE: J.K.

 Opinion of the Court

other order as needed if circumstances have changed such that termination of

juvenile court jurisdiction is no longer appropriate.

 I. Background

 On 29 September 2014, the Cumberland County Department of Social Services

(“DSS”) filed a juvenile petition alleging that one-year-old Jennifer1 was neglected

and dependent. According to the petition, DSS received two child protective services

referrals in September of 2014. Respondent-mother had a history of problems due to

her mental illness, and she failed to take her medication as prescribed. On 28

September 2014, respondent-mother was admitted to Cape Fear Valley Medical

Center because she was having auditory and visual hallucinations; this was

respondent-mother’s second hospital admission in one month due to the same issues.

Shortly after her admission to the hospital, respondent-mother tested positive for

marijuana. At that time, DSS was unable to locate any suitable relatives to provide

temporary care and supervision for Jennifer, so DSS took Jennifer into nonsecure

custody. On 1 December 2014, the trial court had a hearing regarding the nonsecure

custody order; the trial court ordered “[t]hat the juvenile shall continue to be placed

in the home with the Respondent Father and Paternal Grandmother.”2 On 18 August

2015, the trial court entered an order adjudicating Jennifer dependent.

 1 A pseudonym is used to protect the juvenile’s privacy and for ease of reading.

 2 The December 2014 order was not actually entered—signed and filed – until 22 April 2016,
nearly two years later.

 -2-
 IN RE: J.K.

 Opinion of the Court

 On 17 February 2016, the trial court held a permanency planning hearing. On

17 May 2016, the trial court entered two orders based upon the 17 February 2016

hearing. First, the trial court entered an order entitled “Permanency Planning Order

and Order to Close Juvenile Court Case File” (“Permanency Planning Order”).

(Original in all caps.) In the Permanency Planning Order the trial court made

findings of fact regarding both respondents’ and the juvenile’s circumstances. The

trial court also found as follows:

 23. That the permanent plan of reunification with the
 Respondent Father has been achieved.

 24. That a termination of parental rights should not be
 pursued in this matter inasmuch as the permanent
 plan of reunification has been accomplished.

 ....

 26. The Court finds that at this time it would be
 appropriate to return legal and physical custody of
 the juvenile to the Respondent Father, . . ., and that
 will be the Order of the Court. The Court finds that
 this will achieve the permanent plan of care for the
 juvenile and that further Judicial Review hearings
 are no longer necessary. The Court will allow the
 Department and Guardian ad Litem to close their
 respective Juvenile Court case files in this matter[.]

The trial court then ordered “[t]hat legal and physical custody of the juvenile . . . shall

be returned to the Respondent Father” and “[t]hat the Cumberland County

Department of Social Service and the Guardian ad Litem should be allowed to close

their Juvenile Court case files[.]” The trial court also released the respondents’ court-

 -3-
 IN RE: J.K.

 Opinion of the Court

appointed counsel and granted visitation to respondent-mother for an hour of

visitation supervised by respondent–father every other week at a particular

McDonald’s restaurant.3

 Also on 17 May 2016, the trial court entered another order, entitled simply

“ORDER” (“Custody Order”).4 The brief, two-page Custody Order incorporates the

findings from the Permanency Planning Order. The Custody Order includes a

conclusion of law that “North Carolina is the home state of the juveniles [(sic)] and

this Court has jurisdiction over the juvenile under the provisions of the Uniform Child

Custody Jurisdiction Enforcement Act for the purpose of entering an Order on

Custody.” The Custody order then grants legal and physical custody of the juvenile

to respondent-father and supervised visitation to respondent-mother, just as set forth

in the Permanency Planning Order. Respondent-mother filed notice of appeal “from

the Review Order changing custody of the above minor child that was filed on May

17, 2016.”

 II. Standard of Review

 Our review of a permanency planning order is
 limited to whether there is competent
 evidence in the record to support the findings
 and whether the findings support the
 conclusions of law. The trial court’s findings

 3 Previously, DSS had been providing the supervision for visitation.

 4Within the text of the order, the trial court calls the order an “Order on Custody[.]” The
custody order does not refer to any particular statutory basis for its provisions but only notes that it
was based upon evidence presented “at a Permanency Planning hearing[.]”

 -4-
 IN RE: J.K.

 Opinion of the Court

 of fact are conclusive on appeal when
 supported by any competent evidence, even if
 the evidence could sustain contrary findings.
 In choosing an appropriate permanent plan
 under N.C. Gen. Stat. § 7B–906.1 (2013), the
 juvenile’s best interests are paramount. We
 review a trial court’s determination as to the
 best interest of the child for an abuse of
 discretion. Questions of statutory
 interpretation are questions of law, which are
 reviewed de novo by an appellate court.
 Unchallenged findings of fact are deemed to be supported
 by the evidence and are binding on appeal. Moreover,
 erroneous findings that are unnecessary to support the
 trial court’s conclusions of law may be disregarded as
 harmless.

In re A.C., ___ N.C. App. ___, ___, 786 S.E.2d 728, 733 (2016) (citations and quotation

marks omitted).

 III. Permanency Planning Order

 Respondent-mother argues that “the trial court erred in granting . . .

Jennifer[’]s custody to the respondent father when it concluded that the return of the

juvenile to the respondents would be contrary [] to the welfare and best interests of

the juvenile.” (Original in all caps.) Specifically, respondent-mother argues the trial

court’s conclusions of law in the Permanency Planning Order are contradictory and

prevent this Court from adequately determining whether granting respondent-father

custody of Jennifer was in her best interests.

 Here, the trial court made the following pertinent conclusions of law:

 2. No reasonable means were available to protect the

 -5-
 IN RE: J.K.

 Opinion of the Court

 juvenile, short of out-of-home placement, because
 return to the custody of the Respondents would be
 contrary to the welfare of the juvenile.

3. That the primary permanent plan of reunification
 with the Respondent Father with a secondary
 permanent plan of guardianship with the Paternal
 Grandmother; the Court approves of the permanent
 plans and the plans are consistent with the
 juvenile’s best interests.

4. That the primary permanent plan has been achieved
 today.

5. That the Respondent Mother . . . is not a fit and
 proper person for the care, custody and control of the
 juvenile. That it is in the juvenile’s best interests to
 have supervised visitation with the Respondent
 Mother.

6. That the Respondent Father . . . is a fit and proper
 person for the care, custody and control of the
 juvenile.

7. That return of the juvenile to the custody of the
 Respondents would be contrary to the welfare and
 best interests of the juvenile.

8. That the juvenile remains in need of more care and
 supervision than the Respondent Mother can
 provide for the juvenile at this time.

....

10. That in the best interests of the juvenile, legal and
 physical custody should be with the Respondent
 Father . . . .

 -6-
 IN RE: J.K.

 Opinion of the Court

 Respondent-mother argues that the trial court’s conclusions are contradictory

as conclusions of law 2 and 7 do not support the court’s order awarding custody to

respondent-father because they conclude that the return of Jennifer’s custody to

“respondents” was contrary to her welfare and best interests. After careful review of

the record, we conclude the references to “the Respondents” instead of “Respondent

Mother” in conclusions of law 2 and 7 were clerical errors. See N.C. Gen. Stat. § 1A-

1, Rule 60(a) (2015).

 Clerical mistakes are “mistakes in judgments, orders or other parts of the

record and errors therein arising from oversight or omission . . . .” Id.

 A clerical error is an error resulting from a minor mistake
 or inadvertence, especially in writing or copying something
 on the record, and not from judicial reasoning or
 determination. When, on appeal, a clerical error is
 discovered in the trial court’s judgment or order, it is
 appropriate to remand the case to the trial court for
 correction because of the importance that the record speak
 the truth.

In re D.B., 214 N.C. App. 489, 497, 714 S.E.2d 522, 527 (2011) (citations, quotation

marks, and brackets omitted).

 After conducting the permanency planning hearing on 17 February 2016, the

trial court made the following unchallenged findings of fact:

 5. That the juvenile has been placed in the home with
 the Respondent Father since November 16, 2014.
 That the juvenile is doing very well in the
 placement.

 -7-
 IN RE: J.K.

 Opinion of the Court

6. That the Paternal Grandmother is a good support
 system for the Respondent Father.

7. That the juvenile attends day care five (5) days per
 week. She interacts well with the other children at
 the day care center. [Jennifer] is on a schedule[]
 for toilet training. The juvenile is able to speak a
 few words.

....

9. That the juvenile continues to display self injurious
 behaviors such as scratching her face and neck as
 well as grabbing her hair to the point of pulling it
 out. That Dr. [Smith] at Coastal Carolina
 Neuropsychiatric Center indicated that [Jennifer]’s
 behaviors are most likely due to her lacking a stable
 nurturing environment. That the Respondent
 Father was provided with techniques to help with
 the behaviors.

10. That the Respondent Mother is unemployed. She
 receives disability benefits.

....

12. That the Respondent Mother has history of mental
 health issues and hospitalizations. That the
 Respondent Mother believes she was in witness
 protection with Cape Fear Valley Medical Center.
 That the Respondent Mother continues to deny
 having any mental health problem and continues to
 refuse to obtain and maintain treatment for her
 mental health issues.

....

15. That the Respondent Mother has a CPS history in
 Sampson County where she lost custody of two
 children to their father.

 -8-
 IN RE: J.K.

 Opinion of the Court

 16. That the Respondent Mother has not been compliant
 with recommended Court ordered services.

 ....

 20. That the Respondent Father is employed with
 Goodyear. He works as a driver for Uber Car
 Services and has enrolled in school.

 21. That the Respondent Father has completed Court
 ordered services.

 ....

 23. That the permanent plan of reunification with the
 Respondent Father has been achieved.

 ....

 26. The Court finds at this time it would be appropriate
 to return legal and physical custody of the juvenile to the
 Respondent Father . . . and that will be the Order of the
 Court.

 These binding findings of fact, see In re A.C., ___ N.C. App. at ___, 786 S.E.2d

at 733, support the trial court’s conclusion of law 10 that “in the best interests of the

juvenile, legal and physical custody should be with the Respondent Father” which

supports the ultimate decree granting custody of Jennifer to respondent-father’s

custody. Furthermore, the record fully supports a determination that it was in

Jennifer’s best interests to live with respondent-father and not respondent-mother.

Thus, we conclude the references to “the Respondents” in conclusions of law 2 and 7

were clerical errors in that they should read “Respondent Mother” only. Accordingly,

 -9-
 IN RE: J.K.

 Opinion of the Court

we remand the Permanency Planning Order to the trial court to correct the clerical

errors in conclusions of law 2 and 7 to read “Respondent Mother.”

 IV. Custody Order

 Respondent next argues “the trial court erred in entering a civil custody order

without first terminating the jurisdiction of the juvenile court and making the

required finding that there was no need for continued State intervention on behalf of

the child.” (Original in all caps.) Specifically, respondent contends the trial court

failed to make the requisite findings of fact pursuant to North Carolina General

Statute § 7B-911 to terminate the juvenile court’s jurisdiction before entering the civil

Custody Order. Again, “Questions of statutory interpretation are questions of law,

which are reviewed de novo by an appellate court.” In re A.C., ___ N.C. App. at ___,

786 S.E.2d at 733.

 We first note that the Custody Order is not really a “civil custody order” as

contemplated by North Carolina General Statute § 7B-911. The Custody Order was

entered in the juvenile court file and does not include any provisions transferring

jurisdiction of the case to a Chapter 50 custody matter:

 N.C. Gen. Stat. § 7B–911 specifically provides the
 procedure for transferring a Chapter 7B juvenile
 proceeding to a Chapter 50 civil action. In certain cases
 which have originated as abuse, neglect, or dependency
 proceedings under Chapter 7B of the General Statutes, a
 time may come when involvement by the Department of
 Social Services is no longer needed and the case becomes a
 custody dispute between private parties which is properly

 - 10 -
 IN RE: J.K.

 Opinion of the Court

 handled pursuant to the provisions of Chapter 50. N.C.
 Gen. Stat. § 7B–911 sets forth a detailed procedure for
 transfer of such cases which will ensure that the juvenile
 is protected and that the juvenile’s custodial situation is
 stable throughout this transition. For this reason, N.C.
 Gen. Stat. § 7B–911(b) requires that the juvenile court
 enter a permanent order prior to termination of its
 jurisdiction. After transfer, if a party desires modification
 of the juvenile’s custodial situation under Chapter 50, that
 party must file the appropriate motion for modification and
 demonstrate a substantial change in circumstances
 affecting the best interests of the child. The procedure
 required by N.C. Gen. Stat. § 7B–911 is not a mere
 formality which can be dispensed with just because the
 parties agree to a consent order. Jurisdiction cannot be
 conferred upon the court by consent, but the trial court
 must exercise its jurisdiction only in accordance with the
 applicable statutes.

Sherrick v. Sherrick, 209 N.C. App. 166, 169–70, 704 S.E.2d 314, 317 (2011) (citations

omitted). Indeed, North Carolina General Statute § 7B-911 provides:

 (a) Upon placing custody with a parent or other
 appropriate person, the court shall determine whether or
 not jurisdiction in the juvenile proceeding should be
 terminated and custody of the juvenile awarded to a parent
 or other appropriate person pursuant to G.S. 50-13.1, 50-
 13.2, 50-13.5, and 50-13.7.

 (b) When the court enters a custody order under
 this section, the court shall either cause the order to be
 filed in an existing civil action relating to the custody of the
 juvenile or, if there is no other civil action, instruct the
 clerk to treat the order as the initiation of a civil action for
 custody.
 If the order is filed in an existing civil action and the
 person to whom the court is awarding custody is not a party
 to that action, the court shall order that the person be
 joined as a party and that the caption of the case be

 - 11 -
 IN RE: J.K.

 Opinion of the Court

 changed accordingly. The order shall resolve any pending
 claim for custody and shall constitute a modification of any
 custody order previously entered in the action.
 If the court’s order initiates a civil action, the court
 shall designate the parties to the action and determine the
 most appropriate caption for the case. The civil filing fee is
 waived unless the court orders one or more of the parties
 to pay the filing fee for a civil action into the office of the
 clerk of superior court. The order shall constitute a custody
 determination, and any motion to enforce or modify the
 custody order shall be filed in the newly created civil action
 in accordance with the provisions of Chapter 50 of the
 General Statutes. The Administrative Office of the Courts
 may adopt rules and shall develop and make available
 appropriate forms for establishing a civil file to implement
 this section.5

 (c) When entering an order under this section,
 the court shall satisfy the following:
 (1) Make findings and conclusions that support
 the entry of a custody order in an action under
 Chapter 50 of the General Statutes or, if the
 juvenile is already the subject of a custody
 order entered pursuant to Chapter 50, makes
 findings and conclusions that support
 modification of that order pursuant to G.S. 50-
 13.7.
 (2) Make the following findings:
 a. There is not a need for continued State
 intervention on behalf of the juvenile
 through a juvenile court proceeding.
 b. At least six months have passed since
 the court made a determination that
 the juvenile’s placement with the
 person to whom the court is awarding
 custody is the permanent plan for the
 juvenile, though this finding is not

 5 Unfortunately, from our research it appears that no forms for implementation of North
Carolina General Statute § 7B-911 have yet been developed.

 - 12 -
 IN RE: J.K.

 Opinion of the Court

 required if the court is awarding
 custody to a parent or to a person with
 whom the child was living when the
 juvenile petition was filed.

N.C. Gen. Stat. § 7B-911 (2015) (emphasis added).

 Here, after the 17 February 2016 permanency planning hearing, on 17 May

2016 the trial court entered the Permanency Planning Order establishing the

permanent plan as custody with respondent-father, ordering DSS and the guardian

ad litem to close their juveniles case files, and relieving the respondents’ attorneys

from any further duties; all of these provisions indicate that the trial court intended

to terminate juvenile jurisdiction. But based upon the record before us, the trial court

could not yet enter an order under North Carolina General Statute § 9B-711 since

the permanent plan of reunification with respondent father was adopted on the very

same date, 17 May 2016, and thus six months had not “passed since the court made

a determination that the juvenile’s placement with the person to whom the court is

awarding custody is the permanent plan for the juvenile.” Id.

 The trial court’s separate Custody Order returning legal and physical custody

of Jennifer to respondent-father appears to be intended to transfer the case to be

addressed in the future as a Chapter 50 civil custody matter, but the order does not

include the provisions required by North Carolina General Statute § 7B-911, and it

was premature. See id. Specifically, since the respondents did not have another

custody matter already pending, the civil custody order would need to:

 - 13 -
 IN RE: J.K.

 Opinion of the Court

  “instruct the clerk to treat the order as the initiation
 of a civil action for custody”

  “initiate[] a civil custody action”

  “designate the parties to the action and determine
 the most appropriate caption for the case”

  “[m]ake findings and conclusions that support
 the entry of a custody order in an action under
 Chapter 50 of the General Statutes”

  “make the following findings:
 a. There is not a need for continued State
 intervention on behalf of the juvenile
 through a juvenile court proceeding.
 b. At least six months have passed since
 the court made a determination that
 the juvenile’s placement with the
 person to whom the court is awarding
 custody is the permanent plan for the
 juvenile[.]”

Id.

 The trial court’s Custody Order did “[m]ake findings and conclusions that

support the entry of a custody order in an action under Chapter 50”and made findings

which tend to show that “[t]here is not a need for continued State intervention on

behalf of the juvenile through a juvenile court proceeding[,]” although the order did

not use exactly these words. Id. But the trial court did not make a finding that “[a]t

least six months have passed since the court made a determination that the juvenile’s

placement with the person to whom the court is awarding custody is the permanent

plan for the juvenile,” nor could this finding be made, since the permanent plan was

 - 14 -
 IN RE: J.K.

 Opinion of the Court

not adopted until 17 May 2016; this finding is required since Jennifer was not living

with respondent-father “when the juvenile petition was filed.” Id.

 Although the “initial order removing custody” of Jennifer was entered on 28

September 2014, and Jennifer was first placed with respondent-father on 16

November 2014, the first and only permanency planning hearing held in this case

was the 17 February 2016 hearing, as memorialized in the 17 May 2016 Permanency

Planning Order. See generally N.C. Gen. Stat. § 7B-906.1 (2013). The prior version

of North Carolina General Statute § 7B-906.1 which was in effect when the petition

was filed required that a permanency planning hearing be held within 12 months of

the “initial order removing custody[:]”6

 Within 12 months of the date of the initial order removing
 custody, there shall be a review hearing designated as a
 permanency planning hearing. Review hearings after the
 initial permanency planning hearing shall be designated
 as subsequent permanency planning hearings. The
 subsequent permanency planning hearings shall be held at
 least every six months thereafter or earlier as set by the
 court to review the progress made in finalizing the
 permanent plan for the juvenile, or if necessary, to make a
 new permanent plan for the juvenile.

N.C. Gen. Stat. § 7B-906.1(a) (2013).

 6 The current version, which became effective on 1 July 2016, and the intermediate version,
effective from 1 October 2015 until 30 June 2016, also required a permanency planning hearing to be
held within 12 months of the initial order removing custody. See N.C. Gen. Stat. § 7B-906.1, Effects
of Amendments (2015 & Supp. 2016).

 - 15 -
 IN RE: J.K.

 Opinion of the Court

 Permanency planning hearings were scheduled several times prior to February

2016; one was scheduled for 4 November 2015, but it had to be continued “[d]ue to

the lateness of the hour and the voluminous docket[.]” The November 2015 hearing

was rescheduled and continued a couple more times based on the lack of court time

to hear the case due to the other cases on the docket. Despite the trial court’s efforts

to hold the permanency planning hearing sooner, it was seriously delayed. And

during this long delay, Jennifer was placed with respondent-father and doing well,

while respondent-mother persisted in her refusal to comply with her recommended

treatment and medication to address her mental illness. By the time the permanency

planning hearing was held, we would agree with the trial court that there seemed to

be no practical reason to continue DSS’s involvement in the case, but North Carolina

General Statute § 7B-911 requires that at least six months pass after the permanent

plan of placement with respondent-father before the trial court can enter an order

transferring the case as a civil custody matter under Chapter 50. See N.C. Gen. Stat.

§ 7B-911. If the permanent plan had been in place over six months, we could have

remanded the case for a clearer initiation of the civil case and the required findings,

but since it was not, we must reverse the Custody Order and remand for additional

proceedings. See generally id.

 At this point the primary permanent plan for placement with respondent-

father has been in place since 17 May 2016 and we have affirmed the Permanency

 - 16 -
 IN RE: J.K.

 Opinion of the Court

Planning Order, with the minor correction of clerical errors. Assuming no substantial

change in the circumstances of the respondent parents or Jennifer, the trial court

could, on remand, enter a civil custody order terminating the juvenile court’s

jurisdiction under North Carolina General Statute § 7B-911, but an additional

hearing will be necessary on remand to determine if this action is still appropriate.

 V. Conclusion

 For the reasons discussed above, we remand the Permanency Planning Order

for correction of clerical errors. We reverse the Custody Order and remand for

additional proceedings before the trial court to enter any additional order needed,

consistent with this opinion.

 REVERSED in part and REMANDED.

 Chief Judge McGEE and Judge McCULLOUGH concur.

 - 17 -