STROUD, Judge.
 

 *57
 
 Respondent-mother appeals from a permanency planning order and a custody order, both entered the same day, both of which grant legal and physical custody of her daughter to respondent-father. We affirm the permanency planning order and remand for correction of a clerical error. We also reverse and remand the custody order since it does not comply with the requirements of North Carolina General Statute § 7B-911 for termination of juvenile court jurisdiction and entry of a civil custody order enforceable and modifiable under
 
 *58
 
 North Carolina General Statute Chapter 50. On remand, the trial court should enter a new order in accord with North Carolina General Statute § 7B-911.
 

 I. Background
 

 On 29 September 2014, the Cumberland County Department of Social Services ("DSS") filed a juvenile petition alleging that one-year-old Jennifer
 
 [1]
 
 was neglected and dependent. According to the petition, DSS received two child protective services referrals in September of 2014. Respondent-mother had a history of problems due to her mental illness, and she failed to take her medication as prescribed. On 28 September 2014, respondent-mother was admitted to Cape Fear Valley Medical Center because she was having auditory and visual hallucinations; this was respondent-mother's second hospital admission in one month due to the same issues. Shortly after her admission to the hospital, respondent-mother tested positive for marijuana. At that time, DSS was unable to locate any suitable relatives to provide temporary care and supervision for Jennifer, so DSS took Jennifer into non-secure custody. On 1 December 2014, the trial court had a hearing regarding the non-secure custody order; the trial court ordered "[t]hat the juvenile shall continue to be placed in the home with the Respondent Father and Paternal Grandmother."
 
 [2]
 

 *441
 
 On 18 August 2015, the trial court entered an order adjudicating Jennifer dependent.
 

 On 17 February 2016, the trial court held a permanency planning hearing. On 17 May 2016, the trial court entered two orders based upon the 17 February 2016 hearing. First, the trial court entered an order entitled "Permanency Planning Order and Order to Close Juvenile Court Case File" ("Permanency Planning Order"). (Original in all caps.) In the Permanency Planning Order the trial court made findings of fact regarding both respondents' and the juvenile's circumstances. The trial court also found as follows:
 

 23. That the permanent plan of reunification with the Respondent Father has been achieved.
 

 24. That a termination of parental rights should not be pursued in this matter inasmuch as the permanent plan of reunification has been accomplished.
 

 ....
 

 *59
 
 26. The Court finds that at this time it would be appropriate to return legal and physical custody of the juvenile to the Respondent Father, ..., and that will be the Order of the Court. The Court finds that this will achieve the permanent plan of care for the juvenile and that further Judicial Review hearings are no longer necessary. The Court will allow the Department and Guardian ad Litem to close their respective Juvenile Court case files in this matter[.]
 

 The trial court then ordered "[t]hat legal and physical custody of the juvenile ... shall be returned to the Respondent Father" and "[t]hat the Cumberland County Department of Social Service and the Guardian ad Litem should be allowed to close their Juvenile Court case files[.]" The trial court also released the respondents' court-appointed counsel and granted visitation to respondent-mother for an hour of visitation supervised by respondent-father every other week at a particular McDonald's restaurant.
 
 [3]
 

 Also on 17 May 2016, the trial court entered another order, entitled simply "ORDER" ("Custody Order").
 
 [4]
 
 The brief, two-page Custody Order incorporates the findings from the Permanency Planning Order. The Custody Order includes a conclusion of law that "North Carolina is the home state of the juvenile[ ] and this Court has jurisdiction over the juvenile under the provisions of the Uniform Child Custody Jurisdiction Enforcement Act for the purpose of entering an Order on Custody." The Custody order then grants legal and physical custody of the juvenile to respondent-father and supervised visitation to respondent-mother, just as set forth in the Permanency Planning Order. Respondent-mother filed notice of appeal "from the Review Order changing custody of the above minor child that was filed on May 17, 2016."
 

 II. Standard of Review
 

 Our review of a permanency planning order is limited to whether there is competent evidence in the record to support the findings and whether the
 
 *60
 
 findings support the conclusions of law. The trial court's findings of fact are conclusive on appeal when supported by any competent evidence, even if the evidence could sustain contrary findings. In choosing an appropriate permanent plan under N.C. Gen. Stat. § 7B-906.1 (2013), the juvenile's best interests are paramount. We review a trial court's determination as to the best interest of the child for an abuse of discretion. Questions of statutory interpretation are questions of law, which are reviewed
 
 de novo
 
 by an appellate court.
 

 Unchallenged findings of fact are deemed to be supported by the evidence and are binding on appeal. Moreover, erroneous findings that are unnecessary to support
 
 *442
 
 the trial court's conclusions of law may be disregarded as harmless.
 

 In re A.C.
 
 , --- N.C. App. ----, ----,
 
 786 S.E.2d 728
 
 , 733 (2016) (citations and quotation marks omitted).
 

 III. Permanency Planning Order
 

 Respondent-mother argues that "the trial court erred in granting ... Jennifer[']s custody to the respondent father when it concluded that the return of the juvenile to the respondents would be contrary [ ] to the welfare and best interests of the juvenile." (Original in all caps.) Specifically, respondent-mother argues the trial court's conclusions of law in the Permanency Planning Order are contradictory and prevent this Court from adequately determining whether granting respondent-father custody of Jennifer was in her best interests.
 

 Here, the trial court made the following pertinent conclusions of law:
 

 2. No reasonable means were available to protect the juvenile, short of out-of-home placement, because return to the custody of the Respondents would be contrary to the welfare of the juvenile.
 

 3. That the primary permanent plan of reunification with the Respondent Father with a secondary permanent plan of guardianship with the Paternal Grandmother; the Court approves of the permanent plans and the plans are consistent with the juvenile's best interests.
 

 4. That the primary permanent plan has been achieved today.
 

 *61
 
 5. That the Respondent Mother ... is not a fit and proper person for the care, custody and control of the juvenile. That it is in the juvenile's best interests to have supervised visitation with the Respondent Mother.
 

 6. That the Respondent Father ... is a fit and proper person for the care, custody and control of the juvenile.
 

 7. That return of the juvenile to the custody of the Respondents would be contrary to the welfare and best interests of the juvenile.
 

 8. That the juvenile remains in need of more care and supervision than the Respondent Mother can provide for the juvenile at this time.
 

 ....
 

 10. That in the best interests of the juvenile, legal and physical custody should be with the Respondent Father....
 

 Respondent-mother argues that the trial court's conclusions are contradictory as conclusions of law 2 and 7 do not support the court's order awarding custody to respondent-father because they conclude that the return of Jennifer's custody to "respondents" was contrary to her welfare and best interests. After careful review of the record, we conclude the references to "the Respondents" instead of "Respondent Mother" in conclusions of law 2 and 7 were clerical errors.
 
 See
 
 N.C. Gen. Stat. § 1A-1, Rule 60(a) (2015).
 

 Clerical mistakes are "mistakes in judgments, orders or other parts of the record and errors therein arising from oversight or omission...."
 

 Id.
 

 A clerical error is an error resulting from a minor mistake or inadvertence, especially in writing or copying something on the record, and not from judicial reasoning or determination. When, on appeal, a clerical error is discovered in the trial court's judgment or order, it is appropriate to remand the case to the trial court for correction because of the importance that the record speak the truth.
 

 In re D.B.
 
 ,
 
 214 N.C.App. 489
 
 , 497,
 
 714 S.E.2d 522
 
 , 527 (2011) (citations, quotation marks, and brackets omitted).
 

 *62
 
 After conducting the permanency planning hearing on 17 February 2016, the trial court made the following unchallenged findings of fact:
 

 5. That the juvenile has been placed in the home with the Respondent Father since November 16, 2014. That the juvenile is doing very well in the placement.
 

 6. That the Paternal Grandmother is a good support system for the Respondent Father.
 

 *443
 
 7. That the juvenile attends day care five (5) days per week. She interacts well with the other children at the day care center. [Jennifer] is on a schedule[ ] for toilet training. The juvenile is able to speak a few words.
 

 ....
 

 9. That the juvenile continues to display self injurious behaviors such as scratching her face and neck as well as grabbing her hair to the point of pulling it out. That Dr. [Smith] at Coastal Carolina Neuropsychiatric Center indicated that [Jennifer]'s behaviors are most likely due to her lacking a stable nurturing environment. That the Respondent Father was provided with techniques to help with the behaviors.
 

 10. That the Respondent Mother is unemployed. She receives disability benefits.
 

 ....
 

 12. That the Respondent Mother has history of mental health issues and hospitalizations. That the Respondent Mother believes she was in witness protection with Cape Fear Valley Medical Center. That the Respondent Mother continues to deny having any mental health problem and continues to refuse to obtain and maintain treatment for her mental health issues.
 

 ....
 

 15. That the Respondent Mother has a CPS history in Sampson County where she lost custody of two children to their father.
 

 16. That the Respondent Mother has not been compliant with recommended Court ordered services.
 

 *63
 
 ....
 

 20. That the Respondent Father is employed with Goodyear. He works as a driver for Uber Car Services and has enrolled in school.
 

 21. That the Respondent Father has completed Court ordered services.
 

 ....
 

 23. That the permanent plan of reunification with the Respondent Father has been achieved.
 

 ....
 

 26. The Court finds at this time it would be appropriate to return legal and physical custody of the juvenile to the Respondent Father ... and that will be the Order of the Court.
 

 These binding findings of fact,
 
 see
 

 In re A.C.
 
 , --- N.C. App. at ----,
 
 786 S.E.2d at 733
 
 , support the trial court's conclusion of law 10 that "in the best interests of the juvenile, legal and physical custody should be with the Respondent Father" which supports the ultimate decree granting custody of Jennifer to respondent-father's custody. Furthermore, the record fully supports a determination that it was in Jennifer's best interests to live with respondent-father and not respondent-mother. Thus, we conclude the references to "the Respondents" in conclusions of law 2 and 7 were clerical errors in that they should read "Respondent Mother" only. Accordingly, we remand the Permanency Planning Order to the trial court to correct the clerical errors in conclusions of law 2 and 7 to read "Respondent Mother."
 

 IV. Custody Order
 

 Respondent-mother next argues "the trial court erred in entering a civil custody order without first terminating the jurisdiction of the juvenile court and making the required finding that there was no need for continued State intervention on behalf of the child." (Original in all caps.) Specifically, respondent-mother contends the trial court failed to make the requisite findings of fact pursuant to North Carolina General Statute § 7B-911 to terminate the juvenile court's jurisdiction before entering a civil custody order. Again, "[q]uestions of statutory interpretation are questions of law, which are reviewed
 
 de novo
 
 by an appellate court."
 
 In re A.C.
 
 , --- N.C. App. at ----,
 
 786 S.E.2d at 733
 
 .
 

 *64
 
 We first note that the Custody Order is not really a "civil custody order" as contemplated by North Carolina General Statute § 7B-911. The Custody Order was entered in the juvenile court file and does not include
 
 *444
 
 any provisions transferring jurisdiction of the case to a Chapter 50 custody matter:
 

 N.C. Gen. Stat. § 7B-911 specifically provides the procedure for transferring a Chapter 7B juvenile proceeding to a Chapter 50 civil action. In certain cases which have originated as abuse, neglect, or dependency proceedings under Chapter 7B of the General Statutes, a time may come when involvement by the Department of Social Services is no longer needed and the case becomes a custody dispute between private parties which is properly handled pursuant to the provisions of Chapter 50. N.C. Gen. Stat. § 7B-911 sets forth a detailed procedure for transfer of such cases which will ensure that the juvenile is protected and that the juvenile's custodial situation is stable throughout this transition. For this reason, N.C. Gen. Stat. § 7B-911(b) requires that the juvenile court enter a permanent order prior to termination of its jurisdiction. After transfer, if a party desires modification of the juvenile's custodial situation under Chapter 50, that party must file the appropriate motion for modification and demonstrate a substantial change in circumstances affecting the best interests of the child. The procedure required by N.C. Gen. Stat. § 7B-911 is not a mere formality which can be dispensed with just because the parties agree to a consent order. Jurisdiction cannot be conferred upon the court by consent, but the trial court must exercise its jurisdiction only in accordance with the applicable statutes.
 

 Sherrick v. Sherrick
 
 ,
 
 209 N.C.App. 166
 
 , 169-70,
 
 704 S.E.2d 314
 
 , 317 (2011) (citations omitted). Indeed, North Carolina General Statute § 7B-911 provides in relevant part:
 

 (a) Upon placing custody with a parent or other appropriate person, the court
 
 shall
 
 determine whether or not jurisdiction in the juvenile proceeding should be terminated and custody of the juvenile awarded to a parent or other appropriate person pursuant to G.S. 50-13.1, 50-13.2, 50-13.5, and 50-13.7.
 

 *65
 
 (b) When the court enters a custody order under this section, the court
 
 shall
 
 either cause the order to be filed in an existing civil action relating to the custody of the juvenile or, if there is no other civil action, instruct the clerk to treat the order as the initiation of a civil action for custody.
 

 ....
 

 If the court's order initiates a civil action, the court shall designate the parties to the action and determine the most appropriate caption for the case. The civil filing fee is waived unless the court orders one or more of the parties to pay the filing fee for a civil action into the office of the clerk of superior court. The order shall constitute a custody determination, and any motion to enforce or modify the custody order shall be filed in the newly created civil action in accordance with the provisions of Chapter 50 of the General Statutes. The Administrative Office of the Courts may adopt rules and shall develop and make available appropriate forms for establishing a civil file to implement this section.
 
 [5]
 

 (c) When entering an order under this section, the court
 
 shall
 
 satisfy the following:
 

 (1) Make findings and conclusions that support the entry of a custody order in an action under Chapter 50 of the General Statutes....
 

 (2) Make the following findings:
 

 a. There is not a need for continued State intervention on behalf of the juvenile through a juvenile court proceeding.
 

 N.C. Gen. Stat. § 7B-911 (2015) (emphasis added).
 

 Here, after the 17 February 2016 permanency planning hearing, on 17 May 2016 the trial court entered the Permanency Planning Order establishing the permanent plan as custody with respondent-father, ordering DSS and the guardian ad litem to close their juveniles case files, and relieving the respondents' attorneys from any further duties;
 

 *66
 
 all
 
 *445
 
 of these provisions indicate that the trial court intended to terminate juvenile jurisdiction. The trial court's separate Custody Order returning legal and physical custody of Jennifer to respondent-father appears to be intended to transfer the case to be addressed in the future as a Chapter 50 civil custody matter, but the order does not include the provisions required by North Carolina General Statute § 7B-911.
 
 See
 
 id.
 

 Specifically, since the respondents did not have another custody matter already pending, any civil custody order would need to:
 

 • "instruct the clerk to treat the order as the initiation of a civil action for custody"
 

 • "initiate[ ] a civil custody action"
 

 • "designate the parties to the action and determine the most appropriate caption for the case"
 

 • "[m]ake findings and conclusions that support the entry of a custody order in an action under Chapter 50 of the General Statutes"
 

 • make a finding that "[t]here is not a need for continued State intervention on behalf of the juvenile through a juvenile court proceeding."
 

 Id.
 

 The trial court's Custody Order did "[m]ake findings and conclusions that support the entry of a custody order in an action under Chapter 50" and made findings which tend to show that "[t]here is not a need for continued State intervention on behalf of the juvenile through a juvenile court proceeding[,]" although the order did not use exactly these words.
 

 Id.
 

 At this point in time, the primary permanent plan for placement with respondent-father has been in place since 17 May 2016 and we have affirmed the Permanency Planning Order, with remand for the correction of minor clerical errors. We also reverse and remand the Custody Order so that the trial court may on remand enter a civil custody order terminating the juvenile court's jurisdiction in compliance with North Carolina General Statute § 7B-911. The trial court may, in its sole discretion, hold an additional hearing prior to entry of the new order on remand.
 

 V. Conclusion
 

 For the reasons discussed above, we affirm the Permanency Planning Order but remand for correction of clerical errors. We reverse and remand the Custody Order for additional proceedings before the trial court to enter a new order consistent with this opinion.
 

 *67
 
 AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.
 

 Chief Judge McGEE and Judge McCULLOUGH concur.
 

 [1]
 

 A pseudonym is used to protect the juvenile's privacy and for ease of reading.
 

 [2]
 

 The December 2014 order was not actually entered-signed and filed-until 22 April 2016, nearly two years later.
 

 [3]
 

 Previously, DSS had been providing the supervision for visitation.
 

 [4]
 

 Within the text of the Custody Order, the trial court calls the order an "Order on Custody[.]" The Custody Order does not refer to any particular statutory basis for its provisions but only notes that it was based upon evidence presented "at a Permanency Planning hearing[.]"
 

 [5]
 

 Unfortunately, from our research it appears that no forms for implementation of North Carolina General Statute § 7B-911 have yet been developed.