IN THE COURT OF APPEALS OF NORTH CAROLINA

2021-NCCOA-399

No. COA20-193

Filed 3 August 2021

Cumberland County, No. 18 CVD 2799

ISSAC MUNOZ, Plaintiff,

v.

CASSANDRA MUNOZ, Defendant.

Appeal by defendant from order entered 20 August 2019 by Judge Edward A. Pone in Cumberland County District Court. Heard in the Court of Appeals 10 June 2021.

*Ward and Smith, P.A., by Christopher S. Edwards and Alex C. Dale, for plaintiff-appellee.*

*Smith Debnam Narron Drake Saintsing & Myers, L.L.P., by Alicia Jurney, for defendant-appellant.*

ZACHARY, Judge.

¶ 1    Defendant-Mother Cassandra Munoz appeals from a permanent custody order awarding Plaintiff-Father Issac Munoz primary physical custody of their daughter, M.M.[1] After careful review, we affirm.

## Background

¶ 2    Mother and Father grew up in California and were "high[-]school sweethearts,"

---

[1] Initials are used to protect the identity of the minor child.

with Father graduating in 2010 and Mother graduating in 2012. They also married in 2012, and M.M. was born to the young couple in 2015. Mother was, and remains, a member of the United States Army. In 2016, the Army stationed Mother at Fort Bragg near Fayetteville, North Carolina, where she worked as a test measurement and diagnostic equipment maintenance support specialist.

¶ 3    When M.M. was born, both parents worked, but they preferred not to leave M.M. in daycare, so they relied on extended family to provide care for M.M. Father's grandmother lived with them and cared for M.M. before and after the family moved to Fayetteville following Mother's assignment to Fort Bragg. Mother's father has also lived with the family and taken care of M.M. For most of M.M.'s life, Mother and Father have had live-in family support to care for her.

¶ 4    While living in Fayetteville in 2018, Mother and Father separated. At that time, Mother was anticipating deployment to Iraq for nine months.

¶ 5    On 16 April 2018, Father filed a complaint in Cumberland County District Court seeking divorce from bed and board, child custody, child support, and equitable distribution. On 19 April 2018, Father obtained an *ex parte* order restraining Mother from contacting him and awarding Father temporary custody of M.M., as well as exclusive use and possession of the marital residence. On 25 April 2018, Mother filed an emergency motion to set aside the *ex parte* order. The trial court heard the matter that day, and on 3 May 2018, the court entered an order allowing both parties to

occupy the marital residence pending further proceedings.

¶ 6        On 30 April 2018, Mother filed her answer and counterclaims for child custody, child support, and equitable distribution. On 10 May 2018, the parties executed a Memorandum of Judgment regarding temporary child custody, which the trial court entered on 27 June 2018 ("the temporary custody order"). Pursuant to the temporary custody order, the parties agreed that it was in M.M.'s best interest for them to share joint legal custody, with Father having primary physical custody and Mother having secondary physical custody. The parties also agreed to permit Father to relocate to California with M.M.

¶ 7        On 15 May 2018, Mother filed a motion to amend the temporary custody order, which came on for hearing on 14 June 2018. That same day, Mother filed a motion to review the temporary custody order, in that her deployment had been delayed until July. On 29 June 2018, the trial court entered an order requiring the parties to keep M.M. in North Carolina until Mother deployed, but no later than 1 July 2018.

¶ 8        On 12 July 2018, Mother filed a motion to set aside the temporary custody order, alleging that, *inter alia*, she had been "informed that she [would] no longer [be] deployed." Father and M.M. had already relocated to Victorville, California, where Father was employed as a supervisor for UPS.

¶ 9        Mother's motion to set aside the temporary custody order came on for hearing on 8 October 2018, and on 15 November 2018, the trial court entered its order

establishing a holiday visitation schedule and once again awarding primary physical custody to Father and secondary physical custody to Mother. On 29 November 2018, the parties executed a second Memorandum of Judgment, which the trial court entered on 30 November 2018, modifying the holiday visitation schedule set forth in the trial court's order; a formal typed order was entered on 7 January 2019.

¶ 10     On 19 August 2019, the permanent custody matter came on for hearing in Cumberland County District Court before the Honorable Edward A. Pone. The next day, the trial court entered a permanent custody order awarding primary physical custody to Father and secondary physical custody to Mother. On 11 September 2019, Mother timely filed her notice of appeal.

### *Discussion*

¶ 11     On appeal, Mother argues that the trial court abused its discretion by (1) allowing Father to relocate to California with M.M. without considering the factors set forth in *Ramirez-Barker v. Barker*, 107 N.C. App. 71, 418 S.E.2d 675 (1992), *disapproved of on other grounds by Pulliam v. Smith*, 348 N.C. 616, 501 S.E.2d 898 (1998); and (2) improperly considering her military-service obligations as the basis for determining that it was in M.M.'s best interest for Father to be awarded primary physical custody, in violation of N.C. Gen. Stat. § 50-13.2(f) (2019).

### I.     *Standard of Review*

¶ 12     When this Court reviews a child custody order,

the trial court's findings of fact are conclusive on appeal if supported by substantial evidence, even if there is sufficient evidence to support contrary findings. Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. Unchallenged findings of fact are binding on appeal. The trial court's conclusions of law must be supported by adequate findings of fact. Absent an abuse of discretion, the trial court's decision in matters of child custody should not be upset on appeal.

*Jonna v. Yaramada*, 273 N.C. App. 93, 116, 848 S.E.2d 33, 51 (2020) (citation omitted). "Questions of statutory interpretation are questions of law," which this Court reviews de novo. *In re J.K.*, 253 N.C. App. 57, 60, 799 S.E.2d 439, 441 (2017) (citation omitted).

## II. Ramirez-Barker *Factors*

Mother first argues that the trial court abused its discretion by failing to give appropriate consideration to the *Ramirez-Barker* factors in determining whether relocation to California was in M.M.'s best interest. We disagree.

In *Ramirez-Barker*, this Court discussed the factors relevant to a trial court's evaluation of a child's best interest in a case involving the child's potential relocation.

> In exercising its discretion in determining the best interest of the child in a relocation case, factors appropriately considered by the trial court include but are not limited to: the advantages of the relocation in terms of its capacity to improve the life of the child; the motives of the custodial parent in seeking the move; the likelihood that the custodial parent will comply with visitation orders when he or she is no longer subject to the jurisdiction of the courts

of North Carolina; the integrity of the noncustodial parent in resisting the relocation; and the likelihood that a realistic visitation schedule can be arranged which will preserve and foster the parental relationship with the noncustodial parent.

107 N.C. App. at 79–80, 418 S.E.2d at 680.

¶ 15 However, the *Ramirez-Barker* factors are not a mandatory checklist for trial courts; as always, the primary objective is the determination of the best interest of the child. Trial courts considering this issue are not required "to make explicit findings addressing each and every *Ramirez-Barker* factor." *Tuel v. Tuel*, 270 N.C. App. 629, 632, 840 S.E.2d 917, 920 (2020). "[A]lthough the trial court may appropriately consider these factors, the court's primary concern is the furtherance of the welfare and best interests of the child and [her] placement in the home environment that will be most conducive to the full development of [her] physical, mental and moral faculties." *Id.* at 632–33, 840 S.E.2d at 920 (citation omitted). "All other factors," including the visitation rights of the non-relocating parent, "will be deferred or subordinated to these considerations, and if the child's welfare and best interests will be better promoted by granting permission to remove the child from the [s]tate, the court should not hesitate to do so." *Id.* at 633, 840 S.E.2d at 920 (citation omitted).

¶ 16 Mother compares this case to *Evans v. Evans*, in which "the trial court found . . . that the proposed relocation would adversely affect the relationship between the

father and his child[,]" but "made no other findings about the effect of the proposed relocation on the child." 138 N.C. App. 135, 142, 530 S.E.2d 576, 580 (2000). We vacated and remanded the child custody order in that case because the trial court "fail[ed] to find facts so that this Court [could] determine that the order [wa]s adequately supported by competent evidence and the welfare of the child [wa]s subserved[.]" *Id.*

¶ 17        Mother argues that, like the trial court in *Evans*, the court here "failed to make required findings showing that it had given appropriate consideration to the relevant factors in determining whether [M.M.]'s relocation . . . was in her best interests." Particularly, Mother maintains that the trial court did not consider "the advantages and disadvantages of the proposed relocation" for M.M., nor did it consider or make findings of fact regarding Mother's relationship with M.M. However, careful review of the permanent custody order in this case reflects that the trial court made the requisite findings, and did not abuse its discretion.

¶ 18        First, we note that Mother only challenges two of the trial court's findings of fact:

> 39. [Mother] does not have a support system in close proximity to her and [M.M.] She is here alone.
>
>         . . . .
>
> 46. [Mother] remains in the military. She is here in the Fayetteville area all alone. While she has relatives in

North Carolina, the closest ones are three to four hours away. They are not available at a moment's notice as it would take them several hours to get here.

¶ 19 Mother maintains that, "[w]hile it is true that [her] family members do not live in Fayetteville, it is inaccurate to say that she does not have a support system and that she is alone." Mother misstates the trial court's findings of fact with respect to her support system. Rather than finding that "she does not have a support system" *at all*, the trial court merely found that she does not have a support system "in close proximity to her and [M.M.]" Indeed, the trial court found that M.M. "is fortunate to have such a great supportive family system on both her mother's and father's side of the family."

¶ 20 Neither does Mother challenge the trial court's finding of fact that she "remains here in Fayetteville/Ft. Bragg. Her closest relatives are three to four hours away in Ash[e]ville, North Carolina. She currently lives alone in the marital residence with the family dog." In this, the trial court accurately summarized Mother's testimony from the permanent custody hearing. The trial court's unchallenged findings of fact are supported by competent evidence and binding on appeal, *Jonna*, 273 N.C. App. at 116, 848 S.E.2d at 51, and support those findings that Mother challenges. Mother's challenge to these findings of fact misinterprets the trial court's order and is overruled.

¶ 21 Throughout its findings of fact, the trial court focused a great deal on each

parent's support systems in their respective home states. As the trial court explained, after M.M. was born both parents "soon realized they needed help with the minor child and did not want to put her in daycare. They were both young parents and had never had children before." The trial court found that Father's grandmother "has been an integral part of [M.M.]'s life since shortly after her birth" and was a "live-in care provider" for much of the first two years of her life. The trial court also found that Mother's father came to assist the parents for approximately one year. After reciting this history, the trial court summarized its view of the parents' need for a support system in raising M.M.: "The truth is, they have never parented [M.M.] completely on their own, either together or alone. They have always had family support. And, [M.M.] is fortunate to have such a great supportive family system on both her mother's and father's side of the family."

¶ 22    The trial court then surveyed each of the parents' current support systems in their respective states of residence. The court noted that Father lives in California with his grandmother and uncle; that his grandmother is once again a live-in care provider; and that M.M.'s bedroom has an extra bed so that Father's grandmother can sleep in M.M.'s room "if she needs to." By comparison, the trial court found that Mother lives alone in a home where M.M. has her own bedroom, but that her "closest relatives are three to four hours away[.]"

¶ 23    This case resembles *Tuel* in that the support system of each parent was

similarly a significant factor for the trial court in that case. 270 N.C. App. at 633–34, 840 S.E.2d at 921. Unlike *Tuel*, however, in which the trial court failed to "engage in any comparison" between each parent's home state, "or provide any explanation as to why Indiana would otherwise provide the children with a more enriching environment" than North Carolina, *id.* at 633, 840 S.E.2d at 921, the trial court in the instant case did provide such an explanation.

¶ 24        The trial court found as fact that Father's grandmother "once again is the live-in care provider[,] allowing [F]ather to work and keeping [M.M.] out of daycare and at home with a very familiar relative." The court further found that Father's grandmother "is healthy and able to care for" M.M., who is attending pre-kindergarten, swimming, and taekwondo classes in California. Father also located an elementary school for M.M. within walking distance of their home. Additionally, the trial court found that M.M. "has medical and dental providers there and is doing well in [F]ather's care."

¶ 25        In contrast, the trial court found that although Mother "is a good mother and loves her daughter very much[,]" because Mother does not have a similar familial support system nearby, M.M. "would be in daycare at least eleven hours a day during the week while in [M]other's care[.]" The trial court concluded by contrasting Mother's support system—with her closest relatives "three to four hours away" and "not available at a moment's notice"—against Father's support system, including his

grandmother who "is one of the constants in [M.M.]'s life" and "is available for any and all emergencies" that may arise. These findings all reflect the trial court's comparison of each parent's home state and explanation that living with Father in California would provide M.M. "with a more enriching environment." *Id.*

¶ 26    The trial court clearly considered each parent to be a loving and appropriate custodial parent for M.M. It appears that the trial court determined that Father's more immediately proximate support system was a significant factor in deciding that M.M.'s "welfare and best interests w[ould] be better promoted" by permitting her to relocate from the state. *Id.* at 633, 840 S.E.2d at 920 (citation omitted). Given *Tuel*'s reminder that the *Ramirez-Barker* factors are not a mandatory checklist for a trial court, but rather guideposts for determining a minor child's best interest—which is the true priority in any child custody proceeding—we cannot say that the trial court abused its discretion here. *See Jonna*, 273 N.C. App. at 116, 848 S.E.2d at 51.

¶ 27    Mother also argues that the "trial court's findings of fact do not support its decision regarding the physical custody schedule" established in the permanent custody order. However, Mother does not cite any case law or statutory authority in support of her contention that the trial court abused its discretion in setting that schedule.

¶ 28    Rather, Mother asserts that at the permanent custody hearing, the trial court "refused to grant" her more than a week with M.M. before school started, despite her

"begg[ing] for more time because she had not seen her daughter in six months." Mother testified at the hearing that she had 40 days of leave saved. However, Mother's argument on appeal fails to acknowledge that, at the hearing, she initially requested "at least" one week with M.M., which the trial court awarded her, before she asked for more. After the trial court explained that a week was "what [she] asked for," Mother agreed.

¶ 29        Upon careful review of the record, and the arguments presented on appeal, we cannot say that Mother has shown that the trial court abused its discretion on this issue.

III.    *N.C. Gen. Stat. § 50-13.2(f)*

¶ 30        Mother also asserts that the trial court abused its discretion by considering her military service as the basis for determining that Father should be granted primary physical custody of M.M., in violation of N.C. Gen. Stat. § 50-13.2(f). This argument lacks merit.

¶ 31        Section 50-13.2(f) provides special protection for members of the armed services in custody matters:

> In a proceeding for custody of a minor child of a service member, a court may not consider a parent's past deployment or possible future deployment as the only basis in determining the best interest of the child. The court may consider any significant impact on the best interest of the child regarding the parent's past or possible future deployment.

N.C. Gen. Stat. § 50-13.2(f).

¶ 32    "The primary rule of construction of a statute is to ascertain the intent of the legislature and to carry out such intention to the fullest extent." *Dickson v. Rucho*, 366 N.C. 332, 339, 737 S.E.2d 362, 368 (2013) (citation omitted). "When the language of a statute is clear and unambiguous, there is no room for judicial construction, and the courts must give it its plain and definite meaning." *Rosero v. Blake*, 357 N.C. 193, 206–07, 581 S.E.2d 41, 49 (2003).

¶ 33    Although Mother claims that § 50-13.2(f) prohibits the use of her possible future deployment "as a basis" for determining whether the proposed relocation was in M.M.'s best interest, the plain text of the statute belies her argument: "a court may not consider a parent's . . . possible future deployment as the *only* basis in determining the best interest of the child." N.C. Gen. Stat. § 50-13.2(f) (emphasis added). Section 50-13.2(f) thus clearly contemplates a trial court's consideration of a parent's "possible future deployment" as one basis among others in determining a child's best interest—so long as it is not the *only* basis. *Id.*

¶ 34    In the present case, it is evident that Mother's possible future deployment played a role in the procedural posture leading up to the permanent custody order from which Mother appeals. Mother's possible future deployment was certainly a factor in the parties' decision-making, until Mother was informed that she would not be deployed.

¶ 35    It is less clear, however, that Mother's possible future deployment played a significant role in the trial court's determination that relocation was in M.M.'s best interest. Mother calls our attention to several references in the trial court's order to her military service, but most of these merely provide context for the parties' relationship and the procedural history of the case. The trial court's unchallenged findings of fact state that Mother "was and remains a member of the United States Army"; that Mother enlisted when she was 17 years old; that Mother "was scheduled to deploy at the time of the filing of the action"; that although "she ultimately did not deploy, she remains in the Army and is subject to deployment or reassignment at any time"; and that "Mother is in good standing with the military and plans to remain in at this time."

¶ 36    Only one of these findings references Mother's possible future deployment, and the extent to which that possibility affected the trial court's determination—if at all— is unclear. Considering the trial court's predominant focus on the parents' respective support systems, as previously discussed, we are satisfied that Mother's possible future deployment was not "the only basis in determining the best interest" of M.M. *Id.* Mother's argument is overruled.

### *Conclusion*

¶ 37    For the foregoing reasons, the trial court did not abuse its discretion in determining that relocation to California was in M.M.'s best interest, nor did it violate

N.C. Gen. Stat. § 50-13.2(f) in its order. The permanent custody order is affirmed.

AFFIRMED.

Judges DIETZ and WOOD concur.