An unpublished opinion of the North Carolina Court of Appeals does not constitute controlling legal authority. Citation is disfavored, but may be permitted in accordance with the provisions of Rule 30(e)(3) of the North Carolina Rules of Appellate Procedure.

IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA25-176

Filed 15 October 2025

Mecklenburg County, Nos. 21JA000398-590, 21JA000399-590, 21JA000400-590

IN THE MATTER OF: J.G., S.G., J.C.

Appeal by Respondent-Mother from order entered 17 September 2024 by Judge Faith Fickling-Alvarez in Mecklenburg County District Court. Heard in the Court of Appeals 24 September 2025.

> *The Law Offices of Lisa Noda PLLC, by Lisa Noda, for Respondent-Appellant-Mother.*
>
> *Administrative Office of the Courts, by GAL Staff Attorney Brittany T. McKinney, for the Guardian ad Litem.*
>
> *Senior Associate County Attorney Kristina A. Graham, for Petitioner-Appellee Mecklenburg County Department of Health and Human Services.*

CARPENTER, Judge.

Respondent-Mother appeals from the trial court's 17 September 2024 permanency-planning order ("Permanency-Planning Order #6") concerning the minor children J.G. ("Jackson"), S.G. ("Sadie"), and J.C. ("Jaspen") (collectively, the

"Juveniles").[1] On appeal, Respondent-Mother argues the trial court erred by failing to make required findings prior to granting guardianship of the Juveniles to Paternal Aunt. After careful review, we affirm Permanency-Planning Order #6 and remand for correction of a clerical error.

## I. Factual & Procedural Background

This appeal concerns three of Respondent-Mother's four children: Jackson, born June 2021; Sadie, born February 2018; and Jasper, born November 2013.[2] On 21 September 2021, Mecklenburg County Youth and Family Services ("YFS") filed a petition alleging the Juveniles were neglected and obtained non-secure custody. YFS placed the children in a kinship placement with Paternal Aunt. Following an adjudication hearing on 30 March 2022 and a disposition hearing on 10 June 2022, the trial court concluded the Juveniles were neglected and established a primary plan of reunification and a secondary plan of guardianship or adoption. Thereafter, the trial court conducted permanency-planning hearings on: 8 September 2022; 28 February 2023; 23 May 2023; and 8 November 2023.

Following a permanency-planning hearing conducted on 19 and 26 January 2024, the trial court entered a permanency-planning order ("Permanency-Planning

---

[1] Pseudonyms are used to protect the identity of the juveniles and for ease of reading. *See* N.C. R. App. P. 42(b).

[2] Jackson and Sadie's biological father and Jasper's biological father are not parties to this appeal.

Order #5") on 11 March 2024. In Permanency-Planning Order #5, the trial court

made the following finding of fact:

> 12. Because the juveniles' return home is unlikely within 6 months, the court has considered whether legal guardianship or custody with a relative or some other suitable person should be established, or if adoption should be pursued, and finds: *guardianship is the most appropriate primary plan to achieve permanency* for the juvenile[s] within a reasonable period of time.

The trial court also found "[t]he best plan of care to achieve a safe, permanent home

for [the Juveniles] within a reasonable period of time is: guardianship." Accordingly,

the trial court established a primary plan of guardianship and a secondary plan of

reunification.

Following the next permanency-planning hearing conducted on 4 June 2024,

31 July 2024, and 7 August 2024, the trial court entered four separate orders:

Visitation Order for Mother (the "Visitation Order"); the Guardianship Order;

Amended Permanency-Planning Order #5;[3] and Permanency-Planning Order #6. The

Visitation Order and Guardianship Order were entered at approximately 5:00 p.m.

on 16 September 2024, while Amended Permanency-Planning Order #5 and

---

[3] Amended Permanency-Planning Order #5 corrected a clerical error appearing in Permanency-Planning Order #5. Permanency-Planning Order #5 incorrectly labeled Paternal Aunt as the Juveniles' Paternal Grandmother, instead of their Paternal Aunt. In all other respects, the two orders are identical.

Permanency-Planning Order #6 were entered at approximately 8:00 a.m. the following morning.

In the Guardianship Order, the trial court made the following relevant findings of fact:

> 3. The parents have acted inconsistently with their constitutionally protected status as a parent.
>
> 4. The Court has determined that continuation in or return to the juveniles' home is contrary to the juveniles' health and safety because: The parents failed to alleviate the safety issues that necessitated placement.
>
> 5. The Court has determined that it is in the juveniles' best interest to be placed into the guardianship of [Paternal Aunt].
>
> 6. [Paternal Aunt] stands ready and able to accept the guardianship of the juveniles. She understands the legal significance of the appointment and she has adequate resources to care appropriately for the juveniles, as shown by the following: The Court described the statutory legal authority that would be granted to [Paternal Aunt] as legal guardian, and the rights and responsibilities of a legal guardian, and [Paternal Aunt] has indicated that she is ready, willing, and able to accept the appointment on this date. The Court completed an inquiry of [Paternal Aunt's] income and expenses and determined with information provided by [Paternal Aunt] and received by the Court on this date demonstrates that she has sufficient income to meet the needs of the juveniles.
>
> 7. The juveniles have resided with their [Paternal Aunt] since January 19, 2024. The placement is stable, and continuation of the placement is in the juvenile's best interest.

Based on these findings, the trial court concluded, in relevant part:

- 4 -

3. The parents have acted inconsistently with their constitutionally protected status as a parent.

4. It is necessary for the juveniles' health and safety, and it is in the juveniles' best interest, for YFS to be relieved of physical and legal custody of the juveniles and to grant guardianship of [the Juveniles] to [Paternal Aunt] pursuant to [N.C. Gen. Stat.] §7B-600.

In Permanency-Planning Order #6, the trial court found that "the best plan of care to achieve a safe, permanent home for [the Juveniles] within a reasonable period of time is guardianship and is achieved by this order." The trial court also found that:

24. [Paternal Aunt] stands ready and able to accept the guardianship/custody of [the Juveniles]. She understands the legal significance of the appointment and has adequate resources to care appropriately for the juveniles, as shown by the following: the Court described the statutory legal authority that would be granted to [Paternal Aunt] as legal guardian, and the rights and responsibilities of a legal guardian, and [Paternal Aunt] indicated that she is ready, willing, and able to accept the appointment on this date; the Court completed an inquiry of [Paternal Aunt's] income and expenses and determined it demonstrates that [Paternal Aunt] has sufficient income to meet the needs of the juveniles.

The trial court further determined "[t]he parents have acted inconsistently with their constitutionally protected status as a parent" and "it is in the juveniles' best interest to be placed into the guardianship of Paternal Aunt[.]" Finally, the trial court ordered "[i]t is necessary for the juveniles' health and safety that guardianship of the juvenile(s) . . . shall be granted to [Paternal Aunt], who shall serve in this role without bond[.]" The trial court cross-referenced the Guardianship Order stating,

"See separate Guardianship Order." Respondent-Mother filed written notice of appeal from Permanency-Planning Order #6 on 11 October 2024.

## II. Jurisdiction

This Court has jurisdiction under N.C. Gen. Stat. § 7B-1001(a)(4) (2023).

## III. Issue

The issue is whether the trial court erred by failing to make the required findings *before* granting guardianship of the Juveniles to Paternal Aunt. In other words, whether the trial court reversibly erred by failing to ensure all four orders it prepared and signed on 16 September 2025 were entered before close of business that day.

## IV. Analysis

Respondent-Mother asserts the trial court erred because it failed to make the required findings prior to granting guardianship of the Juveniles to Paternal Aunt. In support of her assertion, Respondent-Mother argues that Permanency-Planning Order #6 was the first order to determine guardianship was the permanent plan, and the Guardianship Order, not Permanency-Planning Order #6, granted guardianship to Paternal Aunt. Respondent-Mother concedes the trial court made the required findings to grant guardianship to Paternal Aunt in Permanency-Planning Order #6. Nevertheless, Respondent-Mother attacks the sequence in which the two orders were entered in an effort to invalidate the guardianship.

This Court reviews a permanency-planning order to determine "whether there is competent evidence in the record to support the findings of fact and whether the findings support the conclusions of law. The trial court's findings of fact are conclusive on appeal if supported by any competent evidence." *In re L.R.L.B.*, 377 N.C. 311, 315, 857 S.E.2d 105, 111 (2021) (cleaned up). "Unchallenged findings of fact are 'deemed to be supported by the evidence and are binding on appeal.'" *In re P.L.E.*, 290 N.C. App. 176, 180, 891 S.E.2d 613, 616 (2023) (quoting *In re J.C.M.J.C.*, 268 N.C. App. 47, 51, 834 S.E.2d 670, 673–74 (2019)). The trial court's conclusions of law are reviewed *de novo*. *Id.* at 180, 891 S.E.2d at 616. " 'Under the *de novo* standard, [this] Court considers the matter anew and freely substitutes its own judgment for that of the lower court.' " *In re N.M.*, 290 N.C. App. 482, 483, 892 S.E.2d 643, 645 (2023) (quoting *In re A.M.*, 220 N.C. App. 136, 137, 724 S.E.2d 651, 653 (2012)).

Before granting guardianship of a juvenile to a nonparent, the trial court must: (1) address whether the parent is unfit or if her conduct has been inconsistent with her constitutionally protected status as a parent, *see In re R.P.*, 252 N.C. App. 301, 304, 798 S.E.2d 428, 430 (2017) (citation omitted); (2) " 'verify that the person being appointed . . . understands the legal significance of the appointment and will have adequate resources to care appropriately for the juvenile[,]' " *In re P.A.*, 241 N.C. App. 53, 59, 772 S.E.2d 240, 245 (2015) (quoting N.C. Gen. Stat. §§ 7B-600(c), -906.1(j) (2013)); and (3) determine that guardianship is in the best interest of the juvenile, *see*

*In re J.R.*, 279 N.C. App. 352, 359, 866 S.E.2d 1, 6 (2021) (citing N.C. Gen. Stat. §§ 7B-906.2(a)(3), -600(a) (2020)).

Because Respondent-Mother does not challenge any of the trial courts findings, they are binding on this Court. *See In re P.L.E.*, 290 N.C. App. at 180, 891 S.E.2d at 616. Notably, Respondent-Mother concedes that the trial court made all of the necessary findings to grant guardianship in Permanency-Planning Order #6. Nevertheless, Respondent-Mother argues the Guardianship Order is invalid due to the sequence in which the trial court's orders were entered. Though it is theoretically true that a fifteen-hour period elapsed between entry of the orders, this hypertechnical procedural argument is not a legal basis for reversal.

First, we note the trial court changed the primary plan to guardianship and the secondary plan to reunification in Permanency-Planning Order #5, entered on 11 March 2024, not Permanency-Planning Order #6, as Respondent-Mother appears to suggest. Second, it is apparent that Permanency-Planning Order #6 was one in a series of orders resulting from a permanency-planning hearing which spanned several days. Not only was Permanency-Planning Order #6 signed by the judge presiding the same day as the Guardianship Order, Permanency-Planning Order #6 cross-references to both the Guardianship Order and the Visitation Order, the validity of which Respondent-Mother does not contest on appeal.

Additionally, the required findings and conclusions appearing in Permanency-Planning Order #6 are nearly identical to the required findings and conclusions made

in the Guardianship Order. The precise timing of entry of the orders is immaterial, however, because Permanency-Planning Order #6 states the permanent plan of guardianship is "achieved by this order," indicating Permanency-Planning Order #6 is self-executing. Because Permanency-Planning Order #6 effectuates the guardianship appointment, Paternal Aunt would still be the Juveniles' guardian even if the Guardianship Order was never entered. Respondent-Mother essentially concedes as much in her jurisdictional statement by noting that Permanency-Planning Order #6 changed the legal custody of the Juveniles by granting guardianship to Paternal Aunt. Indeed, the trial court concluded and ordered in Permanency-Planning Order #6 that: "[i]t is necessary for the juveniles' health and safety that guardianship of the juvenile(s) . . . *shall be granted* to [Paternal Aunt]."

Granted, an order is not "entered" until it is "reduced to writing, signed by the judge, and filed with the clerk of court pursuant to Rule 5." N.C. Gen. Stat. § 1A-1, Rule 58 (2023). So Respondent-Mother is correct that the Guardianship Order was "entered" before Permanency-Planning Order #6. Nevertheless, the timing of entry of the orders is inconsequential. Even assuming *arguendo* that the Guardianship Order was void at the time of entry, any deficiency appearing in the Guardianship Order was cured by 8:24 a.m. on 17 September 2025 when the clerk's office opened for business. Further, we note all four orders were properly entered prior to Respondent-Mother filing her notice of appeal. To illustrate the point, had all four orders been entered at 5:00 p.m. on 16 September 2024, or at 8:00 a.m. on 17

September 2024, the error Respondent-Mother complains of would not exist. Respondent-Mother attempts to manufacture an appealable issue based upon the trial court's failure to ensure its orders were entered simultaneously.

In Permanency-Planning Order #6, the trial court appointed Paternal Aunt as guardian and included the required findings and conclusions. Specifically, the trial court found that Respondent-Mother had acted inconsistently with her fundamental rights as a parent and that Paternal Aunt understood the legal significance of the appointment and had adequate resources to care for the Juveniles. Finally, the trial court determined it was in the best interest of the Juveniles for Paternal Aunt to be appointed as their guardian. Therefore, the trial court's decision to grant guardianship of the Juveniles to Paternal Aunt is supported by the unchallenged findings and conclusions in Permanency-Planning Order #6.

Permanency-Planning Order #6 does, however, contain an inconsistency regarding future permanency-planning hearings. The trial court found that because the Juveniles had not been residing with Paternal Aunt continuously for one year, "at least one more Guardianship Review Hearing" was required. But the trial court ordered in the decretal portion of Permanency-Planning Order #6 that: "[t]he Permanency Planning hearings shall be suspended." A clerical error is one that " 'result[s] from a minor mistake or inadvertence, especially in writing or copying something on the record, and not from judicial reasoning or determination.' " *In re J.K.*, 253 N.C. App. 57, 61, 799 S.E.2d 439, 442 (2017) (quoting *In re D.B.*, 214 N.C.

App. 489, 497, 714 S.E.2d 522, 527 (2011)). " 'When, on appeal, a clerical error is discovered in the trial court's judgment or order, it is appropriate to remand the case to the trial court for correction because of the importance that the record speak the truth.' " *Id.* at 61, 799 S.E.2d at 442 (quoting *In re D.B.*, 214 N.C. App. at 497, 714 S.E.2d at 527).

"In juvenile proceedings, the trial court must conduct review hearings every six months or earlier 'to review the progress made in finalizing the permanent plan for the juvenile, or if necessary, to make a new permanent plan for the juvenile.'" *In re J.M.*, 271 N.C. App. 186, 191, 843 S.E.2d 668, 672 (2020) (quoting N.C. Gen. Stat. § 7B-906.1(a) (2017)). But the trial court may waive future review hearings if it finds by clear, cogent, and convincing evidence that: (1) the juveniles have resided in the placement for a period of at least one year; (2) the placement is stable and continuation of the placement is in the juveniles' best interest; (3) neither the juveniles' nor the rights of any party require that review hearings be held every six months; (4) all parties are aware that the matter may be brought before the court for review at any time by the filing of a motion for review or on the court's own motion; and (5) the court order has designated the relative or other suitable person as the juveniles' permanent custodian or guardian. *See* N.C. Gen. Stat. § 7B-906.1(n)(1)-(5) (2023); *In re J.M.*, 271 N.C. App. at 191, 843 S.E.2d at 672.

Because the Juveniles had not resided with Paternal Aunt for a period of at least one year, the trial court could not waive future review hearings. *See* N.C. Gen.

Stat. § 7B-906.1(n)(1).  Thus, it was proper for the trial court to find another review hearing was required.  Because the trial court stated otherwise in its decree, we remand for the trial court to correct this clerical error.  *See In re J.K.*, 253 N.C. App. at 61, 799 at 442.  On remand, the trial court should revise the decretal portion of Permanency-Planning Order #6 to eliminate the internal inconsistency and reflect the law accurately.

## V.  Conclusion

The timing of entry of the orders did not affect their validity.  Because Permanency-Planning Order #6 is supported by the unchallenged findings, we affirm and remand for correction of the clerical error.

AFFIRMED AND REMANDED FOR CORRECTION OF CLERICAL ERROR.

Judges TYSON and STADING concur.

Report per Rule 30(e).